The complaint in six of the eight counts alleges that the defendant Roderick LeBron was the president and principal stockholder of the defendant LeBron, Inc., a Nebraska corporation, which was engaged in the business of manufacturing and distributing certain electronic games. On March 8, 1973, at a trade fair conducted in Rocky Hill, Connecticut, for the purpose of promoting the distribution of those games by certain employees or agents of those defendants, the plaintiffs signed contracts for the purchase of some of those games and paid for some items purchased. The defendant Robert Goznell is alleged to have been present on that occasion as the agent of the defendant Roderick LeBron in obtaining those contracts. The name *Page 630 
of the seller of the games as it appears on the written agreements, however, is that of the defendant LeBron Industries, Inc., a Nebraska corporation which was not incorporated until March 16, 1973. It is alleged that Roderick LeBron was the promoter, incorporator, and organizer of that corporation and that the written contracts were breached by him individually and also by the two Nebraska corporations, LeBron, Inc., and LeBron Industries, Inc.
The last two counts are directed against the defendant Council of Better Business Bureaus, Inc., hereinafter referred to as the council, a New York corporation. The gravamen of those counts is that the plaintiffs were induced to enter the contracts involved by a response of "the Omaha branch of said defendant" to an inquiry made by the plaintiffs in which they were told that LeBron Industries, Inc., was a perfectly reputable corporation which had been in business for many years in Omaha, Nebraska.
 I
The defendant council filed a motion for summary judgment which was supported by an affidavit of its secretary and general counsel stating that it had no branch office in Omaha, Nebraska, or any offices or employees except in Washington, D.C., and New York City, and that the Better Business Bureau of Omaha is not its agent or representative. A copy of the bylaws of this defendant in effect at the time of the alleged inquiry to the Omaha Bureau was attached. Those bylaws state that the defendant council shall not "be responsible or be liable for any actions of any member by reason of granting membership in the council and the council shall have no control over the separate and individual affairs of such member." The bylaws also *Page 631 
provide for establishing "standards and procedures for the admission of such Bureaus and for the periodic evaluation of all Bureau operations" as well as for the suspension or expulsion of any "Member Bureau."
In their counter affidavits the plaintiffs state that they were led by advertisements in the news media to believe that the local better business bureaus, such as the one in Omaha, were "controlled, regulated, directly affiliated with, responsible to, and agents of the national organization." Attached to those affidavits were two publications of the defendant council on which the plaintiffs relied for support of the claim of agency made in their affidavits. It does not appear that the plaintiffs sought an opportunity to present any material or other facts by deposition or otherwise to justify their opposition to the motion for summary judgment as permitted by Practice Book 301.
We find nothing in those exhibits which even arguably substantiates the assertion of control or agency contained in the affidavits. The booklet "What is a Better Business Bureau" expressly declares that a local bureau does not "provide credit information; act as a reference; give recommendations or endorsements." It also states that such bureaus are "self-regulatory agencies" and that they "are organized as non profit corporations financed entirely by membership dues or subscriptions paid by responsible business firms in the community." The defendant council is referred to in that publication as having offices in New York and Washington and as coordinating activities of the member bureaus and developing programs to improve and standardize local bureau operations. None of those activities indicates any control over the local bureaus or any agency. The other publication, "4 Reasons why You Should Be Part of *Page 632 
the BBB System," contains nothing significant about the relationship between the defendant council and the member bureaus.
The defendant council would have been entitled to summary judgment only if the uncontroverted facts presented to the trial court as contained in the affidavits and exhibits establish that no genuine issue of material fact remained. Spencer v. Good Earth Restaurant Corporation, 164 Conn. 194,197. In reviewing the propriety of granting the motion of the defendant council the test is whether upon these facts a directed verdict in favor of this defendant would have been justified. Ibid.
The plaintiffs claim that the provisions of the bylaws, that the defendant council works with and through its member bureaus in providing certain services, that it may establish admission standards and evaluation standards for local bureaus, and that it may suspend them as members, are sufficient evidence of an agency relationship to warrant submission of that issue to the jury. That argument is similar to the claim rejected in McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, that agency might be found by virtue of the relationship between a national franchiser and a local franchisee who was required to adhere to certain prescribed standards under an arrangement mutually beneficial. "An essential factor in an agency relationship is the right of the principal to direct and control the performance of the work by the agent." Id., 322. No facts are contained in the record to indicate that the defendant council had that right of control over the activities of the local bureaus in respect to any matter involved in this litigation.
The plaintiffs also rely on the doctrine of apparent agency. They claim that the publications mentioned above, by listing the names of the various *Page 633 
member bureaus and describing the functions of the defendant council in coordinating the work of the member bureaus, created the impression that it was a national organization. It is contended that the creation of that impression amounted to holding out the member bureaus as agents of the defendant council. The statements in those publications, however, negate rather than confirm any agency relationship so far as the inquiry of the plaintiffs is concerned which is the subject of this action. One of the publications relied on states that credit information, recommendations, or endorsements are not to be provided by member bureaus. It also states that they are self-regulating agencies organized as nonprofit corporations, and financed by local business firms. We can find no representation in any of the materials in the record which would justify any reasonable presumption on the part of the plaintiffs that the local bureaus were agents of the defendant council, as would be necessary for application of the principle of apparent agency. See Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69.
We conclude that the motion for summary judgment was properly granted.
 II
The motion to erase filed in behalf of the two LeBron corporate defendants, as well as by the defendant Roderick LeBron individually, claimed that they were residents of Nebraska, that they had no place of business in Connecticut, and that they had never transacted any business in Connecticut. The trial court, in considering the first count of the complaint which alleges a breach of contract on the part of each of those defendants, concluded that the solicitation of the contracts or purchase orders within this state did not constitute the transaction of business so as to subject the two corporate *Page 634 
defendants to our jurisdiction. General Statutes 33-411 (b);[1] Lane v. Hopfeld, 160 Conn. 53, 58. No appeal has been taken from any action of the court with respect to the first count. It also appears that no appeal has been taken from the denial of the motion to erase of Roderick LeBron individually as it pertained to the fifth count which alleges that his agent, Robert Goznell, made false representations to the plaintiffs at the trade fair in Rocky Hill concerning the corporate status and reputation of the defendant LeBron Industries, Inc., jurisdiction being predicated on General Statutes 52-59b (a)(2) which authorizes suit against a non-resident individual who "through an agent commits a tortious act within the state."
The appeal on this aspect of the case was taken only from the granting of the motion to erase of Roderick LeBron individually with respect to the second, third, fourth, and sixth counts of the complaint.
The second count alleges that Roderick LeBron, through his agents in Rocky Hill, made use of the name LeBron Industries, Inc., in such a manner as to constitute a deceptive trade practice in violation of General Statutes 42-115d (a)[2] The third count alleges the use of the name of that corporation by agents of Roderick LeBron in Rocky Hill in such a manner as to create confusion. It also alleges negligence on LeBron's part in failing to take reasonable steps to avoid that confusion and to prevent the plaintiffs from being defrauded by *Page 635 
the use of that corporate name. Both of those counts contain a paragraph alleging that "the defendant Roderick LeBron, his agents, servants and/or employees, at Rocky Hill, Connecticut, made use of the name LeBron Industries, Inc., although said corporation had not yet been legally incorporated and although the use of said name was likely to cause confusion and misunderstanding." The paragraph implies that this individual defendant was present in Rocky Hill and personally engaged in some of the wrongful conduct claimed.
The plaintiffs are entitled to the most favorable construction of their complaint, since a motion to erase may be granted only when the lack of jurisdiction appears clearly on the record. Practice Book 94; Karp v. Urban Redevelopment Commission, 162 Conn. 525, 526. Under any fair view of the allegations of those two counts it is plain that they state causes of action against the defendant Roderick LeBron as one "who in person or through an agent" has committed a "tortious act within the state." General Statutes 52-59b (a) (2). The fact that those acts also involved the formation of a contract in no way mitigates their tortious character or converts those counts into actions on the contract, as claimed. We find it difficult to comprehend the basis for distinguishing those counts, so far as the jurisdictional question is concerned, from the fifth count, which alleges fraudulent representations by the defendant Robert Goznell as the agent for the defendant Roderick LeBron. The conclusion of the trial court that the fifth count sufficiently alleged a basis for jurisdiction under 52-59b (a)(2) was equally applicable to the second and third counts.
The fourth count alleges an action on the contract with LeBron Industries, Inc., by the plaintiffs against the defendant Roderick LeBron as the promoter and organizer of that corporation which had *Page 636 
not been formed at the time the contracts were made. The sixth count sets forth claim of unjust enrichment against all of the defendants and incorporates by reference nearly all the paragraphs of the previous five counts. For those two counts the plaintiffs rely principally on the provisions of General Statutes 52-59b (a)(1) which subjects to our jurisdiction "any nonresident individual . . . who in person or through an agent . . . [t]ransacts any business within the state." The trial court concluded that jurisdiction of the defendant Roderick LeBron under that section was precluded by General Statutes 33-397 (b), which provides that "a foreign corporation shall not be considered to be transacting business in this state . . . by reason of . . . (5) soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts." Although the copies of the contracts attached to the complaint contain provisions requiring out-of-state acceptance, we cannot say that the record in this case clearly demonstrates that the defendant Roderick LeBron was not transacting business in this state.
It was not incumbent upon the plaintiffs to plead in the complaint all of the facts and circumstances which may have had a bearing on that issue. Ordinarily a factual assertion, such= as the claim that that defendant was not transacting such business, must be presented by a plea in abatement, so that the precise issue may be formulated by responsive pleadings and evidence presented. Practice Book 93;[3] Village Creek Homeowners Assn. v. Public *Page 637 
Utilities Commission, 148 Conn. 336, 339-40. Since the motion to erase is limited to the record, it was inappropriate for the determination of the jurisdictional question under the circumstances of this case. Karp v. Urban Redevelopment Commission,162 Conn. 525, 526; Perrys, Inc. v. Waterbury Redevelopment Agency, 157 Conn. 122, 123-24.
 There was error in the granting of the motion to erase of the defendant Roderick LeBron in respect to the second, third, fourth and sixth counts of the complaint, and the case is remanded with direction to deny the motion to erase in respect to those counts.
In this opinion SPEZIALE and SPONZO, Js., concurred.