LOMBARD BROTHERS, INC. *v.* GENERAL ASSET MANAGEMENT COMPANY ET AL.
(10911)

PETERS, HEALEY, SHEA, GRILLO and F. HENNESSY, Js.

---

Argued March 3—decision released May 31, 1983

*Mark F. Hughes, Jr.,* of the New Jersey bar, with whom was *John C. Heffernan,* for the appellant (plaintiff).

*Richard Cashman,* of the New York bar, with whom was *Anthony M. Fitzgerald,* for the appellee (defendant Second District Securities Company, Inc.).

PETERS, J. This is an appeal from a judgment of dismissal for lack of personal jurisdiction over a nonresident corporation. The plaintiff, Lombard Brothers, Incorporated (Lombard), brought an action in twelve counts seeking monetary and other relief for losses sustained in various securities transactions. Although its complaint originally sought relief only from its investment advisor, the defendant General Asset Management Company, Inc. (GAM), and GAM's associates, the complaint was subsequently amended to cite in various securities dealers who executed the disputed financial transactions. One of these dealers was the defendant Second District Securities Company, 'Inc. (Second District). After the plaintiff had been afforded an opportunity to explore jurisdictional facts through the use of depositions, the defendant Second District successfully moved for dismissal of the cause of action against it. The plaintiff appeals. We find no error.

The trial court's memorandum of decision reveals the following undisputed facts. In September, 1976, the plaintiff Lombard entered into an agreement with the defendant GAM whereby GAM was to act as Lombard's investment advisor, with broad authority to make and alter investments on Lombard's behalf. Lombard is a Connecticut corporation with offices in Waterbury; GAM is a Delaware corporation with offices in Avon and in New York City.

GAM decided to have Lombard invest in government securities. To this end, GAM had Lombard open an account with the Chemical Bank in New York City. After an initial deposit of $500,000, Lombard made various other deposits to a total of $3,471,894.12 in its Chemical Bank account. GAM, which had authority to use these funds to carry out its investment plan for Lombard, drew on these funds in doing business with government securities dealers in New York, including the defendant Second District, a New York corporation with a New York City office. The defendant Second District never had any direct contact with Lombard. The trades between GAM and Second District, solicited exclusively by GAM, took the form of oral contracts, executed in New York by electronic transfers of federal funds through the Federal Reserve Bank of New York and by banking entries concerning the disposition of the securities. After the trades had been accomplished, confirmation slips accurately restating the essential elements of the trade were prepared by Second District and transmitted to GAM, the originals going to GAM's New York office and the duplicates to GAM's Avon office.

The defendant Second District is a dealer in government securities that deals only in New York and only on its own account as a principal. In Connecticut, it has no office, no bank account, no telephone listing, no property, no agent, and no salesman. It advertises in no local Connecticut papers. During the period in question, it placed only two advertisements in the New York Times and the Wall Street Journal, newspapers which concededly would have entered Connecticut; these advertisements announced additions of personnel.[1] It

[1] In answer to an inquiry by the plaintiff asking about advertising during the period covered by the complaint, the defendant stated that it had

did have some other customers in Connecticut, however. Of a total of three hundred customers, twelve were from Connecticut; of a total of $127,000,000,000 in total trades, $771,000,000 (or .6 percent) involved Connecticut customers. There was no evidence that trading with the defendant's other Connecticut customers was carried on in any way differently from the defendant's trading with this plaintiff.

It is the gravamen of the plaintiff's complaint that speculation in government securities was an inappropriate investment for the plaintiff and that the confirmation slips, mailed to Avon, furnished the basis for the preparation of misleading monthly reports from GAM to the plaintiff. To establish jurisdiction over the defendant Second District, the plaintiff relies on the volume of transactions memorialized by these confirmation slips, 145 trades totaling over $188,000,000, and the defendant's other contact points with Connecticut, principally its relationship to other Connecticut customers.

The trial court found that the defendant Second District was entitled to a dismissal on two grounds. It found an absence of those minimum contacts needed to establish that it would be fair and reasonable, in accordance with *International Shoe Co.* v. *Washington*,

---

published announcements, in March and October, 1977, stating that Stephen F. Warm and Herbert B. Jones had joined the firm.

At other times, the defendant's name had appeared in the New York Times and the Wall Street Journal in "tombstone" advertisements to announce the issuance of securities as to which the defendant was a participating underwriter.

The only evidence relating to the defendant's advertisements in Connecticut is contained in affidavits filed by the defense. The plaintiff asks us to disregard one of these affidavits because it was executed by an attorney for the defendant without sufficient personal knowledge of the underlying facts. We fail to see how admission of this affidavit can harm the plaintiff, since the plaintiff has offered no other evidence to show what newspaper advertisements appeared in Connecticut at the relevant time.

326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945), to require the defendant to come into the state and defend the action. It further found that the defendant's contacts with the state of Connecticut did not comply with the foreseeability requirement of *World-Wide Volkswagen Corporation* v. *Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), that the defendant should reasonably have anticipated that it would be haled into court in Connecticut. These are constitutional considerations, which address the individual liberty interest protected by the due process clause. *Insurance Corporation of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinea,* 456 U.S. 694, 702–703 n.10, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).

Our analysis of the competing claims of the parties cannot, however, begin with the due process clause. Our first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction. See *McFaddin* v. *National Executive Search, Inc.,* 354 F. Sup. 1166, 1168 (D. Conn. 1973); *Zartolas* v. *Nisenfeld,* 184 Conn. 471, 473–78, 440 A.2d 179 (1981); 2 Moore, Federal Practice (2d Ed. 1982) § 4.41-1[1], pp. 4-421—4-422. We note, additionally, that, in the establishment of facts pertaining to personal jurisdiction, it is the plaintiff who bears the burden of proof. *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 459 A.2d 503 (1983).

I

The plaintiff's first statutory claim relies upon General Statutes § 33-411 (b) as a basis for jurisdiction over Second District. That subsection states that "[e]very foreign corporation which transacts business

in this state in violation of section 33-395 or 33-396[2] shall be subject to suit in this state upon any cause of action arising out of such business." The subsection thus confers local jurisdiction over a foreign corporation on two conditions: the transaction of business in this state, and a cause of action arising out of the transaction of such business. The plaintiff claims that the volume of Second District's overall dealings with Connecticut residents, in the amount of $771,000,000 over a two and one-half year period, satisfies both conditions.

We need not decide in this case whether a foreign corporation's large volume of dealings with a large number of local residents for large dollar amounts may not, at some point, suffice to establish "transaction of business" as a basis for personal jurisdiction over that

---

[2] "[General Statutes] Sec. 33-395. RESTRICTIONS ON FOREIGN CORPORATIONS. No foreign corporation referred to in subsection (b) of section 33-286, and no foreign telephone company, shall transact in this state the business authorized by its certificate of incorporation or by the laws of the state under which it was organized, unless empowered so to do by some general or special act of this state, except for the purpose of carrying out and renewing contracts existing upon August 1, 1903."

"[General Statutes] Sec. 33-396. AUTHORITY TO TRANSACT BUSINESS. (a) No foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it has procured a certificate of authority so to do from the secretary of the state, and no insurance, surety or indemnity company shall transact business in this state until it has procured a license from the insurance commissioner in accordance with the provisions of section 38-20.

(b) A foreign corporation shall not be denied a certificate of authority by reason of the fact that the laws of the state under which it is organized governing its organization and internal affairs differ from the laws of this state.

(c) A foreign corporation having duly qualified in this state before January 1, 1961, and having authority on December 31, 1960, to transact business in this state shall be deemed qualified to continue to transact business in this state without procuring the certificate of authority provided for by this section until the expiration of thirty days after the next anniversary date of its qualification to do business in this state pursuant to the statutes relating to foreign corporations and in effect before January 1, 1961."

corporation. Even if the plaintiff could prevail on this issue, it has made no showing whatsoever of any relationship between its causes of action and the business otherwise allegedly transacted by the defendant in this state.

The decisions addressing this aspect of § 33-411 (b) have consistently held that the statutory language mandating "any cause of action arising out of [the transaction of] such business" requires some showing that the present litigation bears some connection with the business conducted by the foreign corporation in this state. *Apolinario* v. *Avco Corporation,* (U.S. D. Ct., D. Conn. Civ. No. H-81-133) (1982); *Shaw* v. *American Cyanamid Co.,* 534 F. Sup. 527, 530 (D. Conn. 1982); *Bross Utilities Service Corporation* v. *Aboubshait,* 489 F. Sup. 1366, 1371 (D. Conn. 1980), aff'd without opinion, 646 F.2d 559 (2d Cir. 1980); *McFaddin* v. *National Executive Search, Inc.,* 354 F. Sup. 1166, 1168 (D. Conn. 1973); *Electric Regulator Corporation* v. *Sterling Extruder Corporation,* 280 F. Sup. 550, 554 (D. Conn. 1968).

While these precedents are all federal cases dealing with diversity jurisdiction; see *Arrowsmith* v. *United Press International,* 320 F.2d 219, 223 (2d Cir. 1963); nothing in our own lower court cases holds to the contrary. In *Connecticut Tool & Mfg. Co.* v. *Bowsteel Distributors, Inc.,* 24 Conn. Sup. 290, 298, 190 A.2d 236 (1963), jurisdiction was premised upon claims found to have arisen directly out of contracts solicited by the foreign corporation in this state. In both *Couchon* v. *LeBron, Inc.,* 33 Conn. Sup. 628, 633–34, 365 A.2d 409 (1976) and *Walter* v. *Hotel Brunswick,* 3 Conn. Cir. Ct. 398, 400–405, 216 A.2d 212 (1965), the court's conclusion that the defendant did no business in this state obviated consideration of the statute's second prong. We therefore adopt the consistent holdings of the

federal court cases and conclude that § 33-411 (b) affords the plaintiff no jurisdictional base in the absence of allegations that the plaintiff's causes of action arose out of the defendant's transaction of business in Connecticut.

## II

In the alternative, the plaintiff relies upon the provisions of § 33-411 (c). Under that subsection, suit may be brought, "whether or not such foreign corporation is transacting or has transacted business in this state . . . on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."[3] The plaintiff claims that the facts it has established demonstrate conduct by the defendant sufficient to invoke three subparts of § 33-411 (c). We shall examine each of these claims in turn.

Before we reach the particulars of statutory construction, however, it is important to describe the general analytic framework within which § 33-411 (c) operates. Unlike § 33-411 (b), this subsection confers jurisdiction over designated causes of action without regard to whether a foreign corporation transacts business in Connecticut and without regard to a causal connection between the plaintiff's cause of action and the defend-

---

[3] General Statutes § 33-411 (c) (3), which is not alleged to be involved in this litigation, confers jurisdiction over a foreign corporation for a cause of action "arising . . . out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state . . . ."

ant's presence in this state. We read this language as requiring inquiry not only into the various elements of the plaintiff's cause of action, spelled out in the various subparts of subsection (c), but also into the totality of contacts which the defendant may have with the forum. The totality of a defendant's contacts may include activities which, because of the applicability of one of the exclusionary provisos of § 33-397,[4] do not constitute "transacting business" in this state. Factors excluded by § 33-397, such as ownership of property in this state and solicitation of business here, may nonetheless be relevant in determining whether the defendant has sufficient minimum contacts with Connecticut, has suffi-

---

[4] "[General Statutes] Sec. 33-397. ACQUISITION AND CONVEYANCE OF PROPERTY. ACTS WHICH DO NOT CONSTITUTE TRANSACTING BUSINESS. (a) Any foreign corporation may purchase, hold, mortgage, lease, sell and convey real and personal estate in this state for its lawful uses and purposes, and may hold such property as it may acquire by foreclosure or otherwise in payment of debts due such corporation without such action constituting transacting business in this state for the purposes of this chapter.

(b) Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities: (1) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes, but nothing in this subdivision shall entitle foreign corporations to maintain suit in this state in violation of section 33-412; (2) holding meetings of its directors or shareholders or carrying on other activities concerning its internal affairs; (3) maintaining bank accounts or borrowing money, with or without security, even if such borrowings are repeated and continuous transactions; (4) maintaining offices or agencies for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities; (5) soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts; (6) creating evidences of debt, mortgages or liens on real or personal property; (7) taking security for or collecting debts due it or enforcing any rights in property securing the same; (8) transacting business in interstate commerce; (9) conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature."

ciently availed himself of the privilege of conducting activities here, to make it fair and just to require the defendant to defend an action in this forum. Under subsection (c), consistent with the constitutional demands of due process, it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here. *World-Wide Volkswagen Corporation* v. *Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); *Kulko* v. *California Superior Court,* 436 U.S. 84, 92, 97–98, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978); *Hanson* v. *Denckla,* 357 U.S. 235, 251, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958); *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 459 A.2d 503 (1983); see 1 Restatement (Second), Judgments § 5, comment b.[5]

It is therefore useful to reiterate the totality of contacts which the defendant Second District had with Connecticut during the period relevant to this litigation. The defendant's relationship with this plaintiff was manifested here only by the plaintiff's transfer of funds from a Connecticut bank to a New York bank and by the defendant's mailing of 145 accurate duplicate confirmation slips from New York to Connecticut. Apart from this, the defendant was shown to have dealt with twelve other customers residing in Connecticut, with whom it did $771,000,000 in trades representing .6 percent of the defendant's total business. The defendant's general advertisements in this state were limited to two

---

[5] 1 Restatement (Second), Judgments § 5, comment b, states in part: "It remains generally necessary that the defendant's course of conduct have implicated him in activities in the state that seeks to exercise jurisdiction in an action determining his obligations."

notices in the New York Times and the Wall Street Journal announcing the names of persons joining the firm.

Bearing these facts in mind, we turn to the plaintiff's principal jurisdictional claim, which looks to the contract provision of § 33-411 (c). That provision applies, according to the plaintiff, for three reasons: the defendant Second District had contractual obligations which it performed in Connecticut; Second District's contract obligations were ancillary to obligations to be performed in this state by GAM in its Connecticut contract with the plaintiff; and the plaintiff had contractual obligations to Second District which the plaintiff performed in Connecticut. These allegations are claimed to be sufficient to show a cause of action arising "out of any contract made in this state or to be performed in this state."

The difficulty with these claims is that they lack evidentiary support. The plaintiff appears to view its relationship with Second District as if Second District had contracted to furnish ongoing services in Connecticut to the plaintiff and to GAM. Nothing in the record, however, supports a finding that Second District did more than to enter into a series of discrete trading transactions, at GAM's instance, with the plaintiff. These trades were in each instance substantially made and executed in New York;[6] neither the plaintiff's preliminary transfer of funds from Connecticut nor the defendant's confirmatory sending of notices to Connecticut can alter the manner and the place that Second District chose to do business. At best, the fund transfers and the confirmation slips were incidental to the New York contracts. Arguably, even incidental acts of per-

---

[6] Although the plaintiff's brief asserts that its claim arose out of a contract made in Connecticut that assertion is unaccompanied by any supporting factual allegations, and hence is unpersuasive.

formance of contracts in this state would come within our statute if the defendant had other significant contacts with this state. See, e.g., *Aycock* v. *Louisiana Aircraft, Inc.*, 617 F.2d 432 (5th Cir. 1980); *Bowman* v. *Grolsche Bierbrouwerij B.V.*, 474 F. Sup. 725, 731–32 (D. Conn. 1979); *Electric Regulator Corporation* v. *Sterling Extruder Corporation*, 280 F. Sup. 550, 556 (D. Conn. 1968); *Koplin* v. *Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 252–53, 219 N.E.2d 646 (1966). Given the sparsity of contacts presented by the present record, however, we must conclude that the plaintiff has not met its burden of proving that § 33-411 (c) (1) confers jurisdiction over the defendant in this case. See *Agrashell, Inc.* v. *Bernard Sirotta Co.*, 344 F.2d 583, 587 (2d Cir. 1965); *Bross Utilities Service Corporation* v. *Aboubshait*, 489 F. Sup. 1366, 1372 (D. Conn. 1980), aff'd without opinion, 646 F.2d 559 (2d Cir. 1980).

Even more serious evidentiary shortcomings defeat the plaintiff's claim to come within the other subparts of § 33-411 (c). The statute, in § 33-411 (c) (2), confers jurisdiction over a cause of action arising out of "any business solicited in this state . . . if the corporation has repeatedly so solicited business . . . ." The only conduct of the defendant that can even arguably be characterized as solicitation is its placement, sporadically, of advertisements in the New York Times and the Wall Street Journal. Such advertisements, without more, cannot constitute repeated solicitation of business. Apart from these advertisements, there is neither allegation nor evidence that the defendant ever expressly solicited business from the plaintiff, from GAM, or from anyone else. This case is therefore factually distinguishable from genuine solicitation cases such as *McFaddin* v. *National Executive Search, Inc.*, 354 F. Sup. 1166, 1168–70 (D. Conn. 1973), upon which the plaintiff relies. The plaintiff is equally fac-

tually foreclosed from invoking § 33-411 (c) (4), which confers jurisdiction over a cause of action arising out of "tortious conduct in this state." The plaintiff here must rely on the defendant's confirmation slips which, mailed to Avon, are arguably "conduct in this state." Conceding the accuracy of the information contained in these confirmation slips, the plaintiff maintains that the defendant had a duty to disclose the financial hazards of speculation in government securities, and that its knowing failure to make such disclosure was fraudulent and hence tortious. The plaintiff has failed, however, to make even a prima facie showing that the defendant undertook such a duty or indeed had been put on notice that the plaintiff's financial posture made margin trading in government securities an inappropriate investment. That other defendants in other circumstances, such as those described in *Murphy* v. *Erwin-Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir. 1972), and *Marine Midland Bank* v. *Keplinger & Associates, Inc.,* 488 F. Sup. 699, 703 (S.D.N.Y. 1980), may have had other duties cannot avail this defendant in carrying its burden of proof in this case.

In the absence of an evidentiary showing by the plaintiff that its cause of action falls within the jurisdictional boundaries set out by § 33-411, the trial court was correct in granting the motion of the defendant Second District for dismissal of the action against it.

There is no error.

In this opinion the other judges concurred.