[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
The plaintiff, a resident of this state, is administrator of the estate of Gayle L. Bourquin. The defendant is a German corporation with its principal place of business in that country. The complaint, in two counts, is based on theories of defective product liability and violations of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff alleges that the defendant manufactured and sold to St. Francis Hospital in Hartford prepared human dura mater tissue under the brand name Lyodura. It further alleges that the product was detective and that its use as a graft during brain surgery on the plaintiff's decedent at the hospital in 1987 caused her death. The defendant moves to dismiss the action based on lack of in personam jurisdiction. Both parties have filed memoranda of law, supporting affidavits and other materials; the court has conducted two hearings for oral argument; and the case was continued to permit the plaintiff to engage in further discovery, including depositions, concerning the jurisdictional issues. This court finds these issues in CT Page 6648 favor of the defendant.
The plaintiff bears the burden of proving facts necessary to establish this court's jurisdiction over the defendant. Lombard Brothers, Inc. v. General Asset Management Company, et al., 190 Conn. 245, 250 (1983). The first inquiry is whether this state's long-arm statute confers jurisdiction under the particular facts of the case. If it does, then the court must consider whether the facts satisfy the due process provisions of the federal constitution. Id.
The plaintiff asserts jurisdiction under the long-arm statute, C.G.S. 33-411, which reads in pertinent part as follows:
 (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . .(3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
Based on the evidence presented by the parties, the court finds the following facts. At all relevant times, the defendant was not licensed or registered to do business in Connecticut. It had no office or other facility in the state, nor did it lease any property here. It had no employees, sales representatives or other agents in the state, and it did not advertise or otherwise solicit business in Connecticut. The Lyodura product was manufactured in Germany. The defendant had a contract with Tri-Hawk International Traders Ltd. (which later changed its name to Tri-Hawk International, Inc.) for the distribution to Lyodura. This contract provided that Tri-Hawk would buy the product from the defendant and sell it as an "independent business entity" with no authority to act for or bind or make any express or implied legal representation on behalf of" the CT Page 6649 defendant. The contract prohibited Tri-Hawk from selling Lyodura anywhere but in Canada and further prohibited the sale to anyone whom Tri-Hawk knew might resell it outside Canada. Although the contract required Tri-Hawk to inform the defendant about market conditions, competition and its activities in selling Lyodura in Canada, it did not require any reporting by Tri-Hawk concerning its activities outside Canada. Every package of Lyodura sold by the defendant to Tri-Hawk bore the admonition "For use in Canada only." Notwithstanding the contractual prohibition, Tri-Hawk sold Lyodura to St. Francis Hospital in Hartford and elsewhere in Connecticut over a period of several years. It did not report the sales to the defendant and the defendant had no knowledge of them until two years after the product was administered to the plaintiff.
The facts set forth above do not establish this court's jurisdiction over the defendant pursuant to C.G.S. 33-411(c)(3). That statute confers jurisdiction when a foreign corporation produces, manufactures or distributes goods "with the reasonable expectation that such goods are to be used or consumed in this state." There is not the slightest evidence indicating that the defendant had any expectation that Tri-Hawk would sell Lyodura in this state. On the contrary, all of the evidence suggests that the defendant took careful, reasonable steps to ensure that the product would not be sold here. Its contractual provisions on the point were clear and complete. It labeled the product to indicate the territorial restriction. Furthermore, Tri-Hawk never informed the defendant concerning its extra-territorial activities.
Similarly, the facts do not establish that the defendant was guilty of any "tortious conduct in this state" so as to confer jurisdiction under C.G.S. 33-411(c)(4). The plaintiff claims the defendant failed to warn of the potential danger of Lyodura. However, since the defendant did not sell Lyodura in Connecticut nor expect that it would be used here, the defendant had no duty to warn Connecticut citizens, including the plaintiff's decedent, concerning any hazards. The plaintiff asserts that Tri-Hawk was the defendant's agent, but this is contradicted by the explicit terms of the contract and there is no other evidence to support that claim.
Even if the state statute were applicable in this case, the court concludes that such application would not comport with the due process requirements of the federal constitution. The plaintiff has not established that the defendant had "minimum contacts" with the state. The mere fact that a product manufactured by the defendant eventually was sold and used in Connecticut is not sufficient. Rather, there must be evidence of some act showing that the defendant "purposefully CT Page 6650 availed itself of the privilege of conducting activities within [Connecticut], thus invoking the benefits and protection of its laws," Asahai Metal, Inc. v. Superior Court of California,480 U.S. 102, 109 (1987); or that "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There is just nothing before the court establishing that the defendant had any contact with Connecticut except the unintended sale of its product. All of the evidence suggests, instead, that the defendant purposefully did not avail itself of the opportunity of doing business here. Indeed, the defendant exercised its efforts to keep its product out of Connecticut. Under these circumstances, the defendant could not reasonably anticipate being sued in the Connecticut courts and maintenance of such a suit would clearly "offend traditional notions of fair play and substantial justice." See International Shoe v. Washington, 326 U.S. 310, 316 (1945).
For the reasons set forth above, this court concludes that the plaintiff has not sustained his burden of proving that the state's long-arm statute applies in this case or that, even if it did apply, the court's jurisdiction would satisfy constitutional requirements. Accordingly, the defendant's motion to dismiss is granted.
MALONEY, J.