[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In both of the above captioned cases brought by the plaintiff, Xerox Corporation (Xerox), the defendants have filed motions to dismiss for lack of personal jurisdiction. Practice Book 143. In the first of the two cases, Xerox seeks to compel arbitration, and in the second case, the plaintiff claims money damages for breach of contract, and also requests a declaratory judgment concerning the respective rights of the plaintiff and defendants with regard to a certain contract between the parties. The defendants in the first case are Axel Johnson Energy Development, Inc. (AJED), Pomona GP, Inc. (PGP), and Pomona Cogeneration Limited Partnership (PCLP), a California limited partnership. In the second case, the defendants are the same as in the first case, plus one additional defendant, Axel Johnson, Inc. (AJ), which has been described as the "parent" corporation of the other defendants.
The deputy sheriff's return of service in both cases indicates that on July 29, 1992, he served process on a Theresa Sears, described in the return as assistant secretary of all three corporations, as well as "assistant secretary" of PCLP, the limited partnership. In the second case, the sheriff's return describes Sears as assistant secretary of AJ. The return in both cases indicates "in hand" service was effected at 300 Atlantic Street in Stamford, which is identified as the principal office of the corporate defendants and of the limited partnership as well. This is proper service on a corporation and on a partnership pursuant to General Statutes 52-57(c) and (d), respectively.[1]
Both cases involve a contract entered into in 1986 between Xerox and Power Development Co., Inc., a predecessor in interest to PCLP. The contract concerns a Xerox manufacturing plant in Pomona, California. CT Page 3166 PCLP operated a cogeneration facility at that location, which supplied both electricity and steam to the Xerox plant.
A hearing as mandated by Standard Tallow Corp. v. Jowdy,190 Conn. 48, 52-53, 459 A.2d 503 (1983), was held in which the following facts were elicited. AJ is a Delaware corporation which is registered to transact business in Connecticut and has appointed an agent for service of process. General Statutes 33-396. It produces and distributes environmental, telecommunication and energy-related products. AJED, a Delaware corporation, is a wholly-owned subsidiary of AJ and is not registered to transact business in this state. It is a holding company which owns PGP, a Delaware corporation not registered to do business in Connecticut. PCLP is a California limited partnership which owns and operates the cogeneration facility. Its limited partner is another wholly-owned subsidiary of AJED, Pomona Co-Gen., Inc., which is not a party to these actions. Its general partner is PGP, which managed the partnership.
AJ and its subsidiaries, the other defendants in this case, moved their offices from New York to Stamford in April, 1992, some three months before these actions began. The evidence at the hearing disclosed that the office on Atlantic Street in Stamford served as executive headquarters for the directors and officers of all the defendants and was the site for conducting corporate affairs. Functions performed there included monitoring and making decisions in litigation matters, processing the payroll, paying bills, maintaining corporate and partnership records, sending out notices of directors' meetings, filing documents with various agencies, receiving reports from its agents, and filing all the papers and documents relating to the three corporations and the limited partnership.
The plaintiff argues that personal jurisdiction over the defendants exists because a proper officer of the defendant corporations, an assistant secretary, was served, and because the defendants maintain their corporate headquarters, their "nerve center", so to speak, in this state. The defendants, however, claim that our court cannot exercise personal jurisdiction unless authorized by General Statutes 33-411 and 52-59B, Connecticut's long arm statutes pertaining to foreign corporations and foreign limited partnerships, respectively.[2]
They further contend that they are not engaged in any of the activities referred to in these statutes.
Many of the cases involving personal jurisdiction over foreign corporations present different issues than those in this case. One fact pattern arises when a Connecticut resident serves the secretary of the CT Page 3167 state and attempts to obtain jurisdiction over a foreign company that does not have its principal and only place of business in this state. These cases necessarily involve constructive service under General Statutes 33-411(c), and the plaintiff has to show that the company performs certain activities in this state. Lombard Bros. Inc., v. General Asset Management Co., 190 Conn. 245, 253, 460 A.2d 481 (1983).
Another fact pattern arises when an officer of a foreign corporation is served with process in this state, either because such officer resides here, or is simply visiting and is served. This was illustrated in Beachboard v. Trustees of Columbia University, 6 Conn. App. 43, 44,502 A.2d 951 (1986), where the chairman of the board of trustees of Columbia University was served at his residence in this state. The court ruled that jurisdiction over a foreign corporation is governed by General Statutes 33-411(c), or 33-519(c) for foreign nonstock corporations, and the court found that Columbia was not performing any of the activities enumerated in the statute, and therefore was not subject to personal jurisdiction in this state.
In the instant case, however, personal service was effected pursuant to General Statutes 52-57(c) and (d) over a proper corporate officer at the defendants' executive headquarters in this state. Plaintiff claims that this alone suffices for personal jurisdiction over the defendant corporations, without regard to the long arm statute, General Statutes 33-411(c). The defendants, however, argue that the mere presence of an office in Stamford is irrelevant, and the real issue is whether any of the activities enumerated in 33-411(c) have occurred. Defendants claim that their office on Atlantic Street in Stamford did not generate the contract with Xerox, nor does the office solicit business, produce or distribute any goods. In addition, the plaintiff did not claim that a tort was committed in this state.
The issue in this case is whether personal jurisdiction over a corporation incorporated in another state and a foreign partnership is achieved solely by proper service at that corporation's corporate headquarters in Connecticut, or whether the nature of the corporation's and partnership's activities in this state must also be considered; and if the latter, whether such activities are sufficient to make the corporation and the partnership subject to personal jurisdiction in Connecticut.
The resolution of this issue starts with the proposition that the defendants in these two cases are foreign corporations and a foreign partnership. Therefore one must necessarily look to General Statutes 33-411 and 52-59B to decide whether this court has jurisdiction. CT Page 3168 Subsection (c) of General Statutes 33-411 refers to corporations without regard to whether they are "transacting business" in this state, and provides for personal jurisdiction over such corporations provided their activities fall within one of the four categories contained therein. It is clear that none of the defendants engaged in conduct in Connecticut, either as a corporation or a partnership, that is encompassed within the above statutes. The contract with Xerox was made in California and was to be performed there. No business was solicited from the Stamford office, nor were any goods manufactured or distributed in this state, and of course a tort is not involved in these suits. Therefore, on the basis of General Statutes 33-411(c), I would find that this court lacked personal jurisdiction over the defendant corporations and limited partnership, despite the presence of the corporate and partnership office in Stamford because that is not one of the criteria referred to in the statute. In addition, Alfred M. Best Co., Inc. v. Goldstein, 124 Conn. 597, 603,1 A.2d 140 (1938), held that the mere presence of an office did not make the corporation amenable to our jurisdiction.
However, there is another basis for personal jurisdiction over AJ in the second suit seeking money damages and a declaratory judgment, as this corporation sought and procured a certificate of authority to transact business in this state. "General Statutes 33-411(a) makes a foreign corporation amenable to service of process when it has obtained authorization from the secretary of the state to transact business in this state." Wallenta v. Avis Rent A Car System, Inc., 10 Conn. App. 201,206, 522 A.2d 820 (1987) (emphasis in original). ". . . General Statutes 33-411(a) means that a foreign corporation which has appointed an agent for service of process because it has acknowledged that it is conducting business within this state will be subject to suit in this state upon any cause of action arising out of such business." Id., 206-207.
As to AJED, PGP, and PCLP, who are defendants in both cases, none sought a certificate from the state to transact business here. Subsection "b" of General Statutes 33-411 provides that corporations which "transact business" in this state, but have failed to register to do so as required by General Statutes 33-396, "shall be subject to suit in this state upon any cause of action arising out of said business." Jurisdiction over a foreign partnership is authorized by General Statutes 52-59B if such partnership "[t]ransacts any business within the state."
As to the defendants other than AJ, which is subject to in personam jurisdiction by virtue of its applying and receiving a certificate to transact business in this state, I think it is fair to say that they CT Page 3169 are transacting business in this state within the scope of General Statutes 33-411(b), not simply because they have their principal office here, but because of the wide scope of activities that occur within that office. Generally, transacting business refers to conducting a substantial part of one's ordinary or customary business on more or less a continuous, rather than a casual or sporadic basis. 36 Am.Jur.2d, Foreign Corporations, 317. A foreign corporation transacts business in this state by performing an important combination of functions, including exercising discretion and making business decisions. Id., 319. See also Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179 (1981)("we construe the term `transact any business' to embrace a single purposeful business transaction"). Some of the activities carried on by the defendants that were mentioned by plaintiff as examples of transacting business are deemed not to constitute the transacting of business so as to require an authorization to do business in this state. General Statutes 33-397, 34-38o. This is not the same inquiry, however, that is required when in personam jurisdiction is challenged. Zartolas, supra, 476, n. 4. ("the phrase `transacts any business' in 52-59b has a broader meaning than the phrase `transacts business' in 33-396 . . ."
A finding that these defendants transacted business in this state without complying with General Statutes 33-396 means that they can be sued in this state under General Statutes 33-411(b) only if the cause of action arises out of the very business transacted in Connecticut. In making this analysis "we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense. and the chronology and geography of the relevant factors." Zartolas, supra, 477. See also Rosenblit v. Danaher, 206 Conn. 125, 140-41, 537 A.2d 145 (1988), and Gaudio v. Gaudio, 23 Conn. App. 287, 298, 580 A.2d 1212 (1990).
The suit in the first case, which seeks arbitration, arises out the alleged refusal of the defendants to proceed to arbitration to determine the purchase price of the cogeneration facility. The evidence indicated that this decision was made during the three month period after the defendants left New York and moved to Stamford. Thus, plaintiff's cause of action, which involves the refusal to arbitrate, arises out of the defendants' transacting of business in this state, viz, the decision not to participate in arbitrating the purchase price of the California facility. It therefore follows that in personam jurisdiction over these three defendants in the first case is authorized by General Statutes 33-411(b).
The second case involves a claim for breach of a contract entered into in California, and, by its terms, to be performed there. Unlike in the first case, the plaintiff did not offer evidence to indicate that CT Page 3170 any alleged breaches were the result of decisions made in Stamford during the three months before service of process was made. Hence, although the defendants were, in the court's view, transacting business here, the causes of action giving rise to the plaintiff's second suit cannot be said to arise out of the business transacted by these defendants in Connecticut. The activities of the defendants in Connecticut, in other words, are not the basis of the cause of action alleged in this breach of contract suit.
Although it has been determined that AJ, by virtue of its applying for and obtaining a certificate of authority to transact business in this state, has made itself amenable to personal jurisdiction, and that the other three defendants transacted business in this state and are subject to personal jurisdiction for causes of action arising out of such business in this state, the inquiry as to jurisdiction cannot end there. A second step is required to determine whether the exercise of jurisdiction over all the defendants violates constitutional principles of due process, as embodied in the due process clause of the14th Amendment to the United States Constitution. Frazer v. McGowan,198 Conn. 243, 246, 502 A.2d 905 (1986). "It is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." Lombard Bros. Inc., v. General Asset Management Co., supra, 255. Where process is served pursuant to a long arm statute and the defendant challenges personal jurisdiction in a motion to dismiss "it is then incumbent on the plaintiff to prove the facts establishing the requisite minimum contacts." Standard Tallow Corp. v. Jowdy, supra, 52-53.
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart, 197 Conn. 34, 41, 495 A.2d 1034 (1985). I believe that the presence of the corporate "nerve center" in Stamford, and the transacting of business in this state by all the defendants, including the decision to resist arbitration, satisfy the requirements of "minimum contacts," and that the defendants "could reasonably have anticipated being haled into court here." As said in Hanson v. Denckla,357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the defendant "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]," and therefore it is not unfair for the defendants in this case to be subjected to the jurisdiction of this court.
Accordingly, the motion to dismiss in the first case requesting arbitration is denied as to all three defendants. In the second case, the motion is denied as to AJ, and granted as to the remaining defendants. CT Page 3171
The defendants also sought dismissal on the ground of forum non conveniens. This doctrine was discussed in both Union Carbide Corporation v. Aetna Casualty Surety Co., 212 Conn. 311. 562 A.2d 16 (1989) and Picketts v. International Playtex, Inc., 215 Conn. 490,576 A.2d 518 (1990). In Union Carbide, the Supreme Court upheld the granting of a dismissal on forum non conveniens grounds, but seemed persuaded by the fact that Union Carbide had withdrawn its appeal of the granting of the dismissal, which was being pursued thereafter only by several counterclaimants. The court also referred to the fact that the plaintiff's causes of action involved toxic waste disposal problems at a number of sites scattered throughout the country, and that it made more sense to try the other similar suits in those areas.
The defendants contend that Connecticut has no genuine connection with these cases except that the plaintiff has chosen its "home state" as the forum, based on the fact that the plaintiff's principal place of business is in this state. That is a very important "except", according to Picketts. It is difficult to imagine after Picketts that the granting of a forum non conveniens motion would ever be sustained, particularly in the light of the Supreme Court's reference to "modern technological innovations" such as jet airplanes, satellites and videotaped depositions. Id., at 511. Moreover, in Picketts, the plaintiffs, who were from British Columbia, did not choose their home forum, but rather decided to come to this state to pursue their action against the defendant whose world headquarters was located in Connecticut. Thus, the trial court's "thumb" which, according to the Supreme Court, must be placed "firmly on the plaintiff's side of the scale, as a representation of the strong presumption in favor of the plaintiff's chosen forum . . ." may not be adjusted to decrease "the downward pressure" in the instant action because Xerox has chosen its own home forum. Id., 502. Accordingly, while I believe that California is the more logical place to try these cases, nevertheless I am persuaded by the Picketts case that rigor mortis has set in on the doctrine of forum non conveniens, and therefore the motion to dismiss on this ground is denied.
A third alternative presented by the defendants was to stay these two cases in Connecticut pending the outcome of litigation involving the same contract in California, in which PCLP is the plaintiff and Xerox is the defendant. Similar actions can proceed in two jurisdictions and I see no reason to stay the actions pending in this court, and therefore decline to grant this request.
So Ordered. CT Page 3172
Dated at Stamford, Connecticut, this 2nd day of April, 1993.
WILLIAM B. LEWIS, JUDGE