[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS
The defendants Hubbard, Lindley and Mabry are beneficiaries of CT Page 1525 the Estate of Walker Evans, which estate is pending in the Probate Court in East Lyme.
The plaintiff seeks to recover from them as the result of an alleged oral agreement calling for him to receive a commission upon his effecting the sale of certain art works these defendants received from the estate.
All three defendants and the plaintiff are nonresidents of Connecticut. The plaintiff served them with process pursuant to Connecticut's "long-arm" statute C.G.S. § 52-59b. This section provides in pertinent part:
 As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . . transacts any business
within the state. . . . (Emphasis added).
The defendants have filed separate Motions to Dismiss, with the issues involved as to each varying to such an extent as to require they be addressed separately.
In these situations, the burden is on the plaintiff to prove the Court has jurisdiction.
 "This court has recognized that the burden of proof is on the plaintiff to prove jurisdiction over the person when constructive service is used. . . . When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction."
Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 55 (1983).
 I As To The Defendant Charles Lindley
This defendant is a resident of Massachusetts whose interest in the Evans Estate is derived from his mother who was a named CT Page 1526 beneficiary. Dr. Lindley owns no real property in Connecticut. The plaintiff seeks to have the Court assert jurisdiction over this defendant by virtue of contacts within Connecticut which constitute "transacting" business under § 52-59b.
While the plaintiff alleges he had two conversations with this defendant in Connecticut, this allegation is questioned by two members of the bar. Both Attorney Snyder, who represented the defendant Mabry, and Attorney Cantor who represented Dr. Lindley, have given evidence that Dr. Lindley was not present at the Probate Court on September 10, 1992. Mr. Snyder, a Connecticut attorney, testified in person, while Attorney Cantor, of the Massachusetts bar, submitted affidavits.
Thus, as to Dr. Lindley, it appears the only "Connecticut contact" consisted of the conversation after the November 12, 1992 Probate Court hearing and the luncheon that followed. However, when cross-examined about the terms of his alleged agreement with Dr. Lindley and Ms. Mabry after their luncheon, Mr. Carey stated he was not their exclusive agent. He said he was to solicit proposals for them as to the murals they had inherited but did not ask what they would pay him and they did not say what they would pay. The murals were never sold so that this all became academic.
Mr. Snyder also testified that there was no retention of the plaintiff to sell the Evans photographic material and in fact he, Snyder, was engaged to do just that. Mr. Snyder also disagrees with Carey's version of Attorney Cantor's conversation with the plaintiff after the September 12 hearing. Carey said Attorney Cantor asked him "What do you expect out of this?" and he indicated a commission would be due. Mr. Snyder says Attorney Cantor asked "What is your interest in this?" and Carey replied he had an agreement with Ms. Hubbard. This is consistent with the Cantor affidavit.
It should also be noted that Attorney Cantor's practice was in Massachusetts. Except for the September 12 East Lyme meeting, her communications with Carey were over the phone, via fax or mail. Connecticut was not the situs for anything she did to represent Dr. Lindley. She denied Dr. Lindley engaged Carey and stated she did not do so as his agent.
Finally, the Court notes the plaintiff did not offer a single writing which confirms the agreement he alleges or even makes reference to it. CT Page 1527
This Court does not find there are sufficient acts, contacts or facts sufficient to confer jurisdiction over this defendant. It would be violative of the principles laid down in InternationalShoe Company v. Washington, 326 U.S. 310 (1945) and adopted by our courts. Lombard Bros., Inc. v. General Asset Management Co.,190 Conn. 245 (1983) et als.
The Motion to Dismiss of the defendant Lindley is granted.
 II As To The Defendant Mabry
As noted above with respect to the Connecticut actions of Dr. Lindley, those of Ms. Mabry are also slight. Again, Mr. Carey claimed that he had two "meetings" in Connecticut with Ms. Mabry. One of these meetings was on September 10, 1992 at the Probate Court, the other was after the November 12 probate hearing which was continued over lunch.
However, Mr. Snyder, who represented Ms. Mabry, testified that no agreement was made with Mr. Carey at the September meeting. In fact, he stated that he, Mr. Snyder, was engaged to speak to several museums and Mr. Carey was never involved in the process. He went on to say there was no meeting with him, Ms. Mabry and Mr. Carey and in fact Ms. Mabry wanted no part of Carey's efforts.
It is significant that Mr. Carey under cross-examination by Attorney Clendenen, presently representing Ms. Mabry, conceded he had no authorization to act as Ms. Mabry's agent arising out of the September meeting. He went on to say he entered into the agreement with her on October 16, 1992 via a telephone conversation. He was in New York, she was in Vermont.
Assuming this conversation occurred, then the November 12 meeting and luncheon were after the fact and thus not the point at which an agreement was reached.
Again, the plaintiff offered no writing to or from Ms. Mabry or her attorney, Mr. Snyder, in which something as vital as an exclusive agency contract was confirmed.
As in the case of Dr. Lindley, the Court cannot find the existence of sufficient acts, contacts or facts to warrant a CT Page 1528 finding which would confer jurisdiction on the courts of this state. The Motion to Dismiss of the defendant Mabry is granted.
 III As To The Defendant Hubbard
This defendant has filed a Motion to Dismiss on two grounds, defective service and lack of personal jurisdiction under § 52-596.
 A.
The major issue as to the service employed results from the fact that Ms. Hubbard is a resident of New Mexico but was served with process directed to her at her mother's residence in Maryland. It developed at the hearing on this motion that she has lived in other states as well but there is no claim she is or was a Connecticut resident.
After a review of the evidence presented at the hearing and the briefs of the parties, it is the conclusion of the Court that, other possible defects aside, the service employed was proper in that the defendant's Maryland address qualifies as her "last known address" under § 52-59b(c).
The Court notes that the defendant was a New Mexico resident but that she did not provide the plaintiff with her address there. He knew her in New York, knew she moved to Sante Fe, New Mexico in 1990, to her mother's address in Maryland in 1992 and to Arizona in 1993. The plaintiff advised him that she could always be reached through her mother at the Maryland address.
However, the significant fact on this issue is a point conceded by both parties, that in the East Lime Probate Court where she is a beneficiary of the Evans Estate, the defendant has listed as her address the Maryland address of her mother — the address where service was made.
Our courts have interpreted § 52-59b(c) as intending to "bring about a reasonable probability of actual notice of the pendency of the action to the defendant." Hartley v. Vitiello, 113 Conn. 74,81 (1931). The use of an address relied on by this defendant to insure her receipt of notices of court proceedings and asset distribution would seem to be more apt to produce the intended result then any other address available to the plaintiff. CT Page 1529
The Court denies the motion on this ground and finds the address utilized satisfies the statute.
 B.
The defendant's second argument is that the record does not disclose any basis upon which the Court can assume personal jurisdiction over this party. Section 52-59b(a) provides jurisdiction over a "nonresident individual" who in person or through an agent does any of the following:
 Transacts any business within the state; or (2) commits a tortious act within the state, . . . or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.
The exhaustive affidavit of the plaintiff supplied in connection with his Application for Prejudgment Remedy, reflects no action of the defendant Hubbard which would bring her under the jurisdiction of this Court.
Similarly, a reading of the proposed complaint discloses no such behavior. The agreement appended to the complaint as Exhibit 1 recites a 1992 agreement between two nonresidents of Connecticut.
In fact, the most that can be said for the plaintiff on this issue is that after signing the agreement out of state, the defendant visited Connecticut and may have inspected the subject matter of the agreement with the plaintiff in Connecticut. That, and her presence at the East Lyme Probate Court and conversations with the plaintiff do not fit the requirements of the statute. CT Page 1530
On this second ground, the defendant must prevail and the defendant Hubbard's Motion to Dismiss is granted.
The Court notes that testimony on this motion was limited to the defective service argument. Lest counsel for the plaintiff feel he was thus precluded countering the defendant's claims, the Court will consider re-argument upon a showing that additional evidence exists which would dictate a different result.
Anthony V. DeMayo State Trial Referee