[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
This is an action instituted by the plaintiff, Jerome H. Charlup, as a Connecticut resident, against the defendant foreign corporations.
In the first count, the plaintiff claims breach of a "settlement agreement" under which the plaintiff was entitled to receive certain compensation and benefits. In the second count, the plaintiff alleges that the defendants failed to deposit certain sums into the plaintiff's 401(K) plan pursuant to the settlement agreement and failed, upon request, to give the plaintiff a proper accounting in violation of the terms of the retirement plan and in violation of federal law. In the third count the plaintiff alleges that the foregoing actions of the defendants constitute unfair trade practices in violation of CUTPA.
The defendants OmniSwiss Properties, Ltd. and OmniCorp Holdings, Inc. have appeared and have filed a motion to dismiss for lack of personal jurisdiction claiming neither is amenable to CT Page 7668 constructive service of process upon the Secretary of State nor subject to in personam jurisdiction under the Connecticut long-arm statute. The defendants assert they are New York corporations with their principal place of business in New York and neither does business in Connecticut and neither has sufficient minimum contacts with Connecticut adequately to establish in personam jurisdiction over them in Connecticut.
We are dealing in this case with the Connecticut long-arm statute concerning corporations. That statute reads, in the part pertinent to the issues raised by the parties, as follows:
 33-411 SERVICE OF PROCESS ON FOREIGN CORPORATION . . . (b) Every foreign corporation which transacts business in this state in violation of section 33-395 or 33-396 shall be subject to suit in this state upon any cause of action arising out of such business. (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
As the defendants note, it is well-settled in Connecticut that when determining whether to assert jurisdiction over a foreign corporation, a trial court must engage in a two-part inquiry. Lombard Bros., Inc. v. General Asset Management Co.,190 Conn. 245, 460 A.2d 481 (1983). It must first decide, whether, CT Page 7669 under the facts of the case, Connecticut's long-arm statute authorizes the exercise of jurisdiction. It must then decide whether the assertion of jurisdiction would offend traditional notions of due process. Frazer v. McGowan, 198 Conn. 243,502 A.2d 905 (1986). Both prongs of this analysis requires the plaintiff to establish facts pertaining to jurisdiction. Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245,460 A.2d 481 (1983); see, Standard Tallow Corporation v. Jowdy,190 Conn. 48, 52, 459 A.2d 503 (1983) (the burden of proof is on the plaintiff to prove jurisdiction over the person when constructive service is utilized); see also, Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Sup. 725 (D.Conn. 1979) (a motion to dismiss will be denied only where plaintiff can establish prima facie conduct by defendant sufficient to justify the exercise of in personam jurisdiction).
"All assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny." Standard Tallow Corporation v. Jowdy,190 Conn. 48, 52, 459 A.2d 503 (1983), quoting Shaffer v. Heitner,433 U.S. 186 (1977); see, Hodge v. Hodge, 178 Conn. 308,422 A.2d 280 (1979). Those standards, as set forth in International Shoe, require the plaintiff to prove that the defendant has certain minimum contacts with the forum state such that the maintenance of a lawsuit would not offend "traditional notions of fair play and substantial justice." Standard Tallow, supra, at 52. (1977); see also, Lombard Bros., Inc. v. General Asset Management Co.,190 Conn. 245, 251, 460 A.2d 481 (1983).
While in Connecticut a plaintiff need not plead the required minimum contacts as part of the complaint. If the defendant challenges the court's jurisdiction, it is incumbent upon the plaintiff to prove the facts establishing the requisite minimum contacts so as to show how each defendant is subject to jurisdiction. Standard Tallow, supra, at 53.
 I.
The plaintiff, Jerome Charlup, testified at a hearing on the defendants' motion.
The evidence indicated that the plaintiff is a resident of the State of Connecticut. The plaintiff and the defendant, Omni Holding AG, a Swiss Company, entered into an agreement in March, 1985, under which the plaintiff was to become president and chief CT Page 7670 operating officer of Omni Holding AG's U.S. subsidiary real estate investment and holding company, which evolved into the defendant, OmniSwiss Properties, Ltd. Omni Holding AG has not appeared in this matter and is not a party to the motion to dismiss.
The plaintiff became the president and chief operating officer of OmniSwiss Properties, Ltd. and continued in that capacity through August 1990. During the course of his employment he relocated to Stamford and conducted about ten percent of his business from his Stamford home, being reimbursed by OmniSwiss for expenses incurred on behalf of the company.
On August 15, 1990, the plaintiff entered into a "settlement agreement" with OmniSwiss Properties, Ltd. under which he resigned his position in return for employment during an initial period through February 15, 1991. The employment included, inter alia, coordinating with Mickey Mills of the company on the "August, Glen Fed and Hanford transactions as well as continuing to work on matters he was involved with during his previous period of employment under the Employment Agreement." The settlement agreement provided for a salary during the initial term, as well as the payment of certain brokerage fees. The plaintiff was also to receive designated health benefits, an automobile allowance, and was to continue to participate in the Pension and 401(k) plan or receive payment of an equivalent amount. He was also allowed seven weeks of vacation, as well as receiving reimbursement for business and travel expenses.
After the initial period, the plaintiff was to be retained as a consultant for six months or, at the company's option, would continue as an employee for that time period.
The settlement agreement also made reference to certain mortgages, including a mortgage dated January 5, 1987 from the plaintiff and Deborah M. Charlup to OmniSwiss Properties, Ltd.
The settlement agreement specifically provided that "[d]uring the Initial Term and the Consulting Term . . ., Charlup shall work from his home and the Company shall not be obligated to provide Charlup with an office. . ." The plaintiff also introduced a letter dated August 12, 1990, from Peter J. Lukas III, of OmniSwiss Properties, Ltd., transmitting salary checks, with the comment: "You will note that both the State and City withholding taxes have been excluded. The company and yourself CT Page 7671 are taking the position (as per the Settlement Agreement) that you are exclusively based at your home."
The plaintiff testified that during the term of the settlement agreement, correspondence and faxes relating to various deals were sent into and out of Connecticut on an almost daily basis. There were telephone consultations on various projects made from his office in Connecticut. He was reimbursed for the cost of setting up and utilizing telephones and fax machines in his Connecticut office. He also held company staff meetings in Connecticut. He also looked at and prepared analyses for properties in Hartford and New Haven on behalf of OmniSwiss. Plaintiff also asserted that he executed various documents in Connecticut as part of his brokerage arrangement with OmniSwiss. The plaintiff stated that to secure certain loans from the company, he had executed a promissory note and a mortgage dated January 5, 1987 in favor of OmniSwiss (Plaintiff's Exhibit E), which was secured by Connecticut property.
The plaintiff also testified that OmniCorp Holdings, Inc. was the U.S. company established by the Omni Holding AG group as the holding company for its non-real estate stock interests. It was the company which managed the 401(k) plans for OmniSwiss Properties, Ltd. The plaintiff stated that he executed the agreement with OmniCorp Holdings, Inc. for participation in the OmniCorp Holdings 401(k) retirement plan in Connecticut. In the course of plan administration, the plaintiff stated that he received reports and accounts from OmniCorp Holdings in Connecticut. Moreover, he also executed other documents on behalf of OmniCorp Holdings, Inc. during the course of the settlement agreement term in Connecticut.
 II.
The defendants assert, in the first instance, that the plaintiff cannot show a basis for jurisdiction under 33-411 (b), since a foreign corporation will be subject to this court's jurisdiction only if (1) the corporation transacts business in Connecticut; and (2) the plaintiff's cause of action against the corporation must have arisen out of the business transacted by the corporation in Connecticut. Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 460 A.2d 481 (1983). The defendants assert that the decisions addressing Section 33-411 (b) have consistently held that the statutory language mandating "any cause of action arising out of the transaction of such CT Page 7672 business" requires some showing that the present litigation bears some connection with the business itself conducted by the foreign corporation in Connecticut. Shaw v. American Cyanamid Co.,534 F. Sup. 527 (D.Conn. 1982); McFaddin v. National Executive Search. Inc., 354 F. Sup. 1166 (D.Conn. (1973); cf. Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245,460 A.2d 481 (1983).
The defendants note that the companies and the individuals familiar with plaintiff's claims are located in New York. Additionally plaintiff's causes of actions do not arise out of any business that was transacted by the defendants in Connecticut. Therefore, they argue Subsection 33-411 (b) cannot be held to confer personal jurisdiction over the defendants.
The defendants assert that 33-411 (c) does not serve to confer in personam jurisdiction over the defendants. The plaintiff makes no claim of any tortious conduct committed by the defendants in Connecticut nor of solicitation of business in Connecticut. Finally, the defendants argue that the action does not involve a contract which was made in Connecticut or to be performed in Connecticut.
The defendants assert that the settlement agreement was executed in New York. In addition, the agreement does set forth that New York law "shall govern the interpretation, validity and performance of the terms of this Settlement Agreement regardless of the law that might be applied under principles of conflict of law." From this they argue that the plaintiff fully expected to perform his obligations under the settlement agreement outside of Connecticut. Since he agreed to permit New York law to govern the agreement, he could not realistically expect that Connecticut courts would assert jurisdiction over claims under the agreement.
The defendants claim that the testimony of the plaintiff did not establish that either OmniSwiss or OmniCorp transacted business in Connecticut or that the plaintiff's cause of action directly arose out of the transaction of that business in Connecticut. The defendants also maintain that the plaintiff's testimony failed to present any evidence of a breach of contract or any other cause of of action arising out of any of the several grounds listed under 33-411 (c) — a contract executed in Connecticut, a contract performed in Connecticut, or tortious activities conducted in Connecticut. CT Page 7673
 III.
The plaintiff, on the other hand, maintains that facts of this case fit squarely within the statutory language authorizing jurisdiction. First, the plaintiff notes that under the terms of the Settlement Agreement between these parties, the plaintiff was required to transact business out of his Connecticut home on behalf of and as the agent of these defendants. Second, the plaintiff transacted business in Connecticut pursuant to the terms of the Settlement Agreement, but he alleges that the defendants refused to compensate him for his efforts as they had agreed to in the said agreement, so that the plaintiff's cause of action clearly "arises out of such business," thus satisfying both requirements of this subsection.
The defendants also suggest that because they maintain their principal place of business in New York, and because they do not maintain an office in Connecticut, they are not "transacting business" here. The plaintiff's response to this is that the defendants did maintain an office here, through the plaintiff, but that even if they did not, the maintenance of an office in this forum has never been a prerequisite to a finding that a defendant is transacting business here. Indeed, it would be contrary to the intent of the long arm statute which seeks to extend jurisdiction over foreign corporations to the full extent provided under the terms of the statute, if a defendant could evade the reach of our courts by paying an individual to maintain an office here on its behalf, and then claiming that it should not be subject to the jurisdiction of the court because its PrinciPal place of business was outside the state.
In Telesco Oilfield Services, Inc. v. Skandia Insurance Company Ltd., 656 F. Sup. 753. 758 (D.Conn. 1987), the court (Zampano, J.) held that,
 Under 33-411 (b), a defendant may be held to have transacted business in the forum even though it is not licensed in Connecticut, nor maintains any office, real estate, bank account, telephone listing, representation or agent in the state. Chemical Specialties Sales Corp. v. Basic, Inc., 296 F. Sup. 1106, 1108 (D.Conn. 1968); accord Eutectic Corp. v. Curtis Noll Sales Corp., 342 F. Sup. 761, 762
(D.Conn. 1972).
CT Page 7674
"The term `transacting business' has been held to embrace `a single purposeful business transaction. . .'" Rosenblit v. Danaher,206 Conn. 125, 138, 537 A.2d 145 (1988)' Zartolas v. Nisenfeld,184 Conn. 471, 474, 440 A.2d 179 (1981) (interpreting General Statutes 52-59(b)(a)(1), the long-arm statute covering nonresidents and foreign partnerships); Hi Fashion Wigs v. Hammond Advertisina, Inc., 32 N.Y.2d 584, 586, 300 N.E.2d 421,347 N.Y.S.2d 47 (1973) (interpreting the New York Counterpart of General Statutes 33-411 (b).
In Zartolas v. Nisenfeld, supra, at 474 for instance, the Connecticut Supreme Court said that. "(t)he term `transacts any business' extends beyond the typical commercial enterprise to include the execution of a warranty deed pursuant to a single sale of real property." The court observed that warranties in the deed anticipated litigation in Connecticut, which is the only forum that can determine title to Connecticut land.
The Connecticut Supreme court in Ronseblit v. Danaher, supra, at 140, observed that:
 In Zartolas, we eschewed `resort to a rigid formula' in resolving the transaction of business in Connecticut but rather determine it upon a balance of `consideration of public policy, common sense, and the chronology and geography of the relevant factors.'
That being said, the plaintiff's principal claim of jurisdiction is, nevertheless, the assertion that the court has personal jurisdiction over these defendants under General Statutes 33-411 (c)(1) because the parties entered into a contract "to be performed" in this state. General Statutes 33-411 (c)(1) provides that:
 c) every foreign corporation shall be subject to suit in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
 (1) Out of any contract made in this state or to be performed in this state. . . (Emphasis added.)
"Unlike 33-411 (b), this subsection confers jurisdiction CT Page 7675 over designated causes of action without regard to whether a foreign corporation transacts business in Connecticut and without regard to a causal connection between the plaintiff's cause of action and the defendant's presence in this state." Lombard Bros. Inc. v. General Asset Management Co., supra, at 253-254.
The plaintiff claims that even if the court were to find that the defendants did not transact business in Connecticut, or that the defendants transacted business here, but that the cause of action did not arise out of the business transacted here, the court's assertion of jurisdiction would still be appropriate upon a finding that there was a "contract . . . to be performed in this state," assuming that the minimum contacts test is met.
The Connecticut Supreme Court stated in Lombard, ". . . even incidental acts of performance of contracts in this state would come within our statute if the defendant had other significant contacts with this state." Id, at 256-257.
In Electric Reagulator Corporation v. Sterling Extruder Corporation, 280 F. Sup. 550 (D.Conn. 1968), the court held that the defendant was subject to personal jurisdiction under this section of the long-arm statute. The court stated at 555:
 In fact, the section must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out of a contract made or to be performed here so long as there are sufficient total contacts to meet constitutional requirements. The qualifications engrafted on the term `transacting business' in section 33-411 (b) . . . do not pervade the other provisions of Connecticut's long-arm statute which, taken as a whole, is meant to extend Connecticut's jurisdictional reach to the constitutional limits.
In Clemco Corporation v. Frantz Manufacturing Co.,609 F. Sup. 56 (D.Conn. 1985), the court held that it had jurisdiction under this section of Connecticut's long-arm statute, over an Illinois corporation for breach of a regional sales representative agreement. The court found that the cause of action arose out of a contract to be performed in Connecticut, and that the defendant had sufficient contacts with connecticut [Connecticut] to satisfy due process guarantees. CT Page 7676
Under the agreement in the Clemco case, the plaintiff Connecticut corporation was to serve as a manufacturer's representative for the defendant. The court noted that it could not be seriously disputed that, pursuant to the express terms of the agreement, Clemco was to render substantial performance in Connecticut.
Similarly, as the plaintiff testified, here the express terms of the parties' Settlement Agreement required performance by the plaintiff in Connecticut. Paragraph 3A of the Settlement Agreement, after first detailing the work the plaintiff was to perform, concluded by providing that "Charlup shall work from his home. . .".
In the Clemco case, the defendant argued that although the plaintiff may have substantially performed its part of the contract in Connecticut, that only a defendant's performance is relevant to a determination of whether the contract is one to be performed in this state.
The court observed that although there was some support for that view in earlier case law, i.e., Glendenning Cos. v. Codesco, Inc., 3 Conn. L. Trib. No. 40, at 16 (Super.Ct. 1977), that view has now been rejected.
 Far more persuasive is the reasoning in such cases as Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Sup. 725
(D.Conn. 1979) (Daly, C.J.), and Publications Group. Inc. v. American Soc. of Heating, Refrigerating and Air-Conditioning Engineers. Inc., 566 F. Sup. 316, (D.Conn. 1983) (Eginton, J.)
 In Bowman, Chief Judge Daly noted "(there is no indication that the Connecticut legislature intended that the language `to be performed in the state' should be given a limited construction to require performance in this state by the party over whom jurisdiction is sought. It would not be appropriate, therefore, for this court to impose such a limitation upon the statute."
Accord, Telesco Oilfield Services. Inc., supra, at 7, where the court, after citing Bowman and Clemco, held that the plaintiff's payment of premiums from Connecticut to an out-of-state insurer," constitutes actual and substantial performance of CT Page 7677 the terms of the contract with the Scandinavian insurers in this state."
In the present case, the plaintiff testified to the performance of different functions in this state in his performance of the terms of the parties' Settlement Agreement. The plaintiff also cites the letter from the defendant, OmniSwiss Properties, Ltd., addressed to the plaintiff at his Connecticut address, in which it is stated, in the first paragraph that: "The company and yourself are taking the position (as per the Settlement Agreement) that you are exclusively based at your home."
 IV.
The defendants claim that, assuming, arguendo, the plaintiff has established facts sufficient to show that the defendants are amenable to service in this State pursuant to 33-411, the plaintiff still has not met the burden of proving that defendants have certain minimum contacts within the State of Connecticut such that the maintenance of this lawsuit would not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310
(1945); Shaffer v. Heitner, 433 U.S. 186 (1977); Lombard Bros., Inc., 190 Conn. 245, 460 A.2d 481 (1983); Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 459 A.2d 503 (1983).
As the defendants assert, whether sufficient "minimum contacts" exist for a court to have jurisdiction is clearly dependent upon the facts of each particular case. Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 459 A.2d 503 (1983). Like any standard that requires a determination of "reasonableness", the `minimum contacts' test of International Shoe is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances'["] are present. Hansen v. Dankly,357 U.S. 235 (1958); Calc [Kulko] v. California Superior Court,436 U.S. 84, rah. denied 438 U.S. 908 (1978).
Here, the defendants claim they have never purposefully availed themselves to the privilege of conducting activities in the State of Connecticut. They view the evidence to show the defendants do not maintain a corporate office nor conduct business within the state of Connecticut and do not solicit business nor advertise for business within Connecticut. In CT Page 7678 short, the defendants claim there is nothing to demonstrate the defendants have any "minimum contacts" with the State of Connecticut and therefore maintenance of this suit in the state of Connecticut would undoubtedly offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945).
Defendants claim the plaintiff may have testified that he conducted business out of his Connecticut residence on behalf of OmniSwiss, but he failed to set forth any evidence to demonstrate that his cause of action arises out of business transacted by OmniSwiss in Connecticut. Moreover, he completely failed to introduce any evidence indicating that he even has a cause of action against OmniSwiss.
As to OmniCorp Holdings, Inc., the defendants claim the only evidence presented was that Omnicorp had been mailing 401(k) plan statements to plaintiff's Connecticut residence. The defendants assert that this activity, even if proven true, does not satisfy the provisions of subsection 33-411 (b), because it does not fit the definition of transacting business in Connecticut and because plaintiff's cause of action does not arise out of this alleged particular activity.
The defendants also claim that 33-411 (c) does not serve to confer in personam jurisdiction over Omnicorp. The activity of mailing 401(K) statements to the plaintiff's Connecticut residence is not "tortious conduct", nor is it as the result of the solicitation of business in Connecticut nor does it involve a contract which was made in Connecticut or to be performed in Connecticut.
The defendants allege the plaintiff has tried to cloud the issue by grouping all of the defendants together as one, then applying the long-arm statute to all of the facts and circumstances associated with this case as a type of "totality of circumstances" test. They assert such analysis is incorrect. Each defendant must be viewed separately and the two-part jurisdictional analysis must be separately applied.
Even if the activity of mailing 401(K) statements can somehow be intertwined with the activity of the other defendants in this action, the defendants maintain that the plaintiff still has the burden of proving that Omnicorp has sufficient minimum contacts within the State of Connecticut so that the maintenance CT Page 7679 of this law suit would not offend traditional notions of fair play and substantial justice. Clearly, the activity of mailing 401(k) statements to Connecticut cannot be deemed sufficient minimum contacts which would subject Omnicorp to the jurisdiction of this court.
 V.
The court agrees with the plaintiff that the motion to dismiss in the instant case alleged two specific claims: (1) that neither of the defendants does business in Connecticut and (2) that neither has sufficient minimum contacts with Connecticut to establish jurisdiction. These are the only two items that were raised and the only two items in dispute for purposes of the motion to dismiss.
Under Connecticut law, it is well established that a Motion to Dismiss admits all well-pleaded facts and that the complaint is to be construed in the light most favorable to the plaintiff. Simeone v. Federal Press Co., 40 Conn. Sup. 173, 485 A.2d 587
(1984).
The cause of action is set out in the three-count complaint and Exhibits A and B which are attached to the complaint. Whether or not there was a breach, the nature of the breach, and whether or not the plaintiff can prove that breach are not issues that has been raised in the motion to dismiss or for the court to resolve at this juncture. The only issues raised in the motion to dismiss were whether or not the defendants were carrying on business in the state and whether or not they had sufficient contacts in the state to be subject to its jurisdiction from a due process standpoint.
Under 33-411 (c) it is not necessary even to establish that the defendants were transacting business within the state. All that is required under this section is to establish that the contract in question was to be performed in the state and that there had been sufficient contacts with the state of Connecticut to satisfy due process guarantees.
The initial agreement between the plaintiff and Omni Holding AG was executed in March of 1985. This was introduced as plaintiff's exhibit A. The supplemental agreement introduced as plaintiff's exhibit B was executed by OmniSwiss properties, Ltd. and approved by Omni Holding AG and is dated August 15, 1990. CT Page 7680 Exhibit B, and in particular Paragraph 3, requires Mr. Charlup to work from his home in Connecticut. This is further evidenced by Defendants' letter of October 12, 1990, which was introduced as plaintiff's Exhibit D. In it, OmniSwiss Properties, Ltd. acknowledges that the plaintiff is exclusively based at his home in Connecticut and that this is based upon the settlement agreement of August 15, 1990. The court is satisfied that the plaintiff has established jurisdiction under 33-411 (c).
The court next must address the factual issue of whether or not there was sufficient contact with the State of Connecticut to meet due process requirements. Based on the testimony at the hearing to which no rebuttal evidence or testimony was offered, the plaintiff claims and the court finds the following contact indicia were established.
1. The plaintiff was required to work in his home in Connecticut.
2. The contract, and in particular, paragraph 3 of Exhibit B, requires him to work on certain specific deals and spells out certain specific duties that he had. He did analyses of various projects on behalf of the defendants, which analyses were done in Connecticut based on information which was forwarded to him in Connecticut.
3. There were faxes relating to various deals sent into and out of Connecticut on a daily basis.
4. There was correspondence sent into and out of Connecticut regarding these various deals on almost a daily basis.
5. There were telephone consultations on various projects made from his office in Connecticut.
6. Plaintiff's paycheck was forwarded to him in Connecticut.
7. The contract called for him to set up telephones and fax machines in Connecticut for which he was reimbursed.
8. Plaintiff had staff meetings in Connecticut.
9. The defendant OmniSwiss Properties, Ltd. was interested CT Page 7681 in and investigated two projects in Connecticut. The plaintiff assisted the defendant and attended two meetings in Connecticut regarding their purchase. One of these projects was located in Hartford. One was located in New Haven.
10. Plaintiff had a brokerage agreement with the defendants. In conjunction therewith, he executed various documents in Connecticut.
11. The corporation loaned money to the plaintiff, as evidenced by a promissory note and an open-end mortgage dated January 5, 1987, introduced as Plaintiff's Exhibit E. Even though it apparently was not witnessed or notarized, the defendants requested and received a mortgage deed on Connecticut property. Under the Zartolas v. Nisenfeld case, that kind of activity alone established sufficient contact.
The plaintiff performed his duties under the settlement agreement in Connecticut. "To be performed in the state" does not require performance in this state by the party over whom jurisdiction is sought. Bowman v. Grolsche Bierbrouwerij B.V.,474 F. Sup. 725 (D.Conn. 1979).
As in Clemco, here jurisdiction based on 33-411 (c) is applicable because the settlement agreement was a contract to be performed in Connecticut. Although in Clemco, the defendant had much greater contact indicia than here, the significant factor is that the contacts were through the plaintiff resident agent. In this case, it was work which was required by contract to be done in Connecticut, acknowledged as such by the defendants and the testimony indicates significant work was, in fact, done in Connecticut.
The court has no difficulty in finding that as to the defendant, OmniSwiss Properties, Ltd., the plaintiff has supplied adequate information to establish in Personam jurisdiction under 33-411 (c) to warrant a denial of its motion to dismiss.
The situation involving OmniCorp Holdings, Inc. is more problematical. The plaintiff has alleged in the Second Count that he entered into an agreement with OmniCorp Holdings, Inc. to participate in the "OmniCorp Holdings, Inc. 401(K) retirement plan." He testified that the agreement with OmniCorp concerning that plan was executed in Connecticut. The 401(k) program was funded by OmniSwiss Properties, Ltd., but management of the fund CT Page 7682 was handled by Omnicorp Holdings, Inc. Omnicorp Holdings, Inc. was, in fact, agent of OmniSwiss Properties, Ltd. to administer the 401(k) plan. The settlement agreement specifically states as part of the compensation and benefits to be received by the plaintiff in return for his efforts that: "(iii) . . . During the Initial Term, (a) Charlup shall continue to participate in the Pension and 401(k) Plan of Omni Corp. Holdings, Inc. or (b) the Company shall pay Charlup an amount equal to that which he would have received as a participant under the Plan during the initial Term." So there was contact with Connecticut through OmniSwiss Properties, Ltd. and the execution of the 401(k) retirement plan agreement itself within Connecticut. The further contact it had with the plaintiff Connecticut resident was primarily through mail and forwarding statements regarding the 401(k) to him in Connecticut.
"Under subsection [33-411] (c), consistent with the constitutional demands of due process, it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." Lombard Bros., Inc., supra, at 255.
Contrary to the defendants' assertion, OmniCorp's activity was not limited to mailing reports concerning the 401(k) to the plaintiff. The only evidence before the court is that the contract with OmniCorp concerning the program was executed in Connecticut and the continuance of the 401(k) program was an integral part of and specifically alluded to in the settlement agreement with OmniSwiss, for which corporation OmniCorp was the agent for purposes of managing the 401(k) agreement.
These factors establish to this court's satisfaction, under the totality of the defendant's conduct, sufficient contact with Connecticut for purposes of in personam jurisdiction over OmniCorp Holdings, Inc. under 33-411 (c).
The defendants' Motion to Dismiss is denied.
NIGRO, J. CT Page 7683