[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS (#131 and #135.50)
This action is one of six brought by the plaintiff, Gamlestaden PLC (GPLC), to collect on loans which are allegedly in default. The background of this action was discussed in prior decisions of this court, Karazin, J., and will not be repeated in detail herein.
On October 20, 1994, the defendants, Adam Backstrom, Magnus Lindholm, Stuart Resources, S.A. (Stuart), Starlux Corp.-Liberia (Starlux), Castelegar Holdings, S.A. (Castelegar), and Intermobil Realty and Development Corp. (Intermobil), filed a revised answer, special defenses, counterclaims and setoff.[1] The counterclaims are against the plaintiff, GPLC, and third-party defendants Gamlestaden AB (GAB), Forvaltnings AB Gamlestaden (FABG), and Gamlestaden Intressenter AB (GIAB).
On May 2, 1994, and May 12, 1994, the third-party defendants filed motions to dismiss (#131 and #135.50) Backstrom's counterclaim and setoff on the ground that the court lacks personal jurisdiction. Parties on both sides filed extensive memoranda of law and documentary evidence in support of, and in opposition to, the motions to dismiss. The parties entered into a stipulation (#168), which was approved by the court, Lewis, J., on July 17, 1995, addressing the filing of briefs and admissibility of evidence.
The purpose of a motion to dismiss is to test whether, on the face of the record, the court is without jurisdiction. Upsonv. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). A motion to dismiss, "properly attacks the jurisdiction of the court essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis omitted; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). Furthermore, the motion to dismiss, "admits all well pleaded facts, the complaint being construed most favorably to the plaintiff . . . ." (Citation omitted; internal quotation marks omitted.) Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45
(1983).
The third-party defendants argue that Connecticut lacks CT Page 1357-QQQ personal jurisdiction over them because they are foreign corporations. Backstrom contends that Connecticut has jurisdiction over each of the defendants, in their individual capacity, under Connecticut's long-arm statute, General Statutes § 33-411. Additionally, Backstrom argues that Connecticut has jurisdiction over the third-party defendants because they are alter-egos of the plaintiff, GPLC. Thus, Backstrom asserts that the corporate veil of the third party defendants should be pierced in order to obtain jurisdiction over them.
I. LONG ARM JURISDICTION
Backstrom argues that Connecticut has jurisdiction over each third party defendant pursuant to Connecticut's long-arm statute, General Statutes § 33-411 (b), (c)(1) and (4). The third-party defendants argue that Backstrom has not met its burden of proof in establishing jurisdiction under § 33-411.
A. Burden of Proof
"If the defendant challenges the court's jurisdiction, it is then incumbent on the plaintiff to prove the facts establishing the requisite minimum contacts." Standard Tallow Corp. v. Jowdy,190 Conn. 48, 53, 459 A.2d 503 (1983).
In the present case, the parties agree that Backstrom bears the burden of establishing jurisdiction. They disagree, however, about the quantum of evidence that Backstrom, the third-party plaintiff, is required to produce. The third-party defendants argue that the standard is a preponderance of the evidence, while Backstrom contends that only a prima facie showing of jurisdiction needs to be made.
The parties rely on federal law in support of their respective positions. The federal law concerning the plaintiff's burden of proof is tailored to reflect the stage of the proceedings. "Prior to discovery, a plaintiff may defeat a jurisdictional challenge by pleading legally sufficient allegations of jurisdiction in good faith. After discovery, a plaintiff must submit an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant . . . . [A]fter a full evidentiary hearing a plaintiff would have to prove jurisdiction by a preponderance of the evidence." Combustion Engineering, Inc. v. NEI InternationalCombustion Ltd., 798 F. Sup. 100, 103 (D.Conn. 1992). CT Page 1357-RRR
The Connecticut courts, however, have not explicitly adopted this federal procedure. See Olson v. Accessory Control Equipment, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 525839 (April 13, 1995, Corradino, J., 14 Conn. L. Rptr. 82) (holding that the Connecticut cases have not explicitly adopted the federal procedure, but it seems to be fair). Moreover, the federal procedure directly conflicts with Connecticut law. The Connecticut Supreme Court held that "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Standard Tallow Corp. v. Jowdy, supra,190 Conn. 56. In contrast, the federal courts have held that a district court has considerable procedural leeway in deciding whether to conduct an evidentiary hearing. Marine Midland Bank,N.A. v. Miller, 664 F.2d 899, 904 (2d. Cir. 1981).
Federal law is not applicable in Connecticut. The parties' reliance on the federal rules is misplaced and the burden of proof shall be determined pursuant to Connecticut law.
No existing Connecticut law has directly established a burden of proof standard in determining jurisdiction.[2] The only Connecticut case that outlines the plaintiff's burden is StandardTallow v. Jowdy, supra, 190 Conn. 48. In Standard Tallow, the Connecticut Supreme Court held that "[w]hen a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54. Therefore, the plaintiff has the burden of producing evidence establishing the court's jurisdiction over the third-party defendants.
B. The Connecticut Long-Arm Statute
"[A] trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of our statute and of the due process clause of the federal constitution." Thomason v. Chemical Bank, 234 Conn. 282,285-86, 661 A.2d 595 (1995). The court's "first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question of CT Page 1357-SSS whether it would offend due process to assert jurisdiction."Lombard Bros. Inc. v. General Asset Management Co., 190 Conn. 245,250, 460 A.2d 481 (1983).
1. General Statutes § 33-411 (b)
Backstrom asserts that Connecticut has jurisdiction over the third-party defendants pursuant to § 33-411 (b), which provides that "[e]very foreign corporation which transacts business in this state in violation of § 33-395[3] or 33-396[4] shall be subject to suit in this state upon any cause of action arising out of such business." General Statutes § 33-411 (b). "The subsection thus confers local jurisdiction over a foreign corporation on two conditions: the transaction of business in this state, and a cause of action arising out of the transaction of such business." Lombard Bros. Inc. v. General AssetManagement Co., supra, 190 Conn. 251.
Each third-party defendant argues that it does not transact business in Connecticut and submits an affidavit from an officer or director of its respective corporation to this effect. These affidavits state that each third-party defendant has: (1) never had an office or a branch office in Connecticut; (2) nor a subsidiary with an office in Connecticut; (3) never had employees in Connecticut; (4) never been qualified or licensed to do business in Connecticut; (5) never had a telephone number or listing in Connecticut; (6) never had a bank account in Connecticut; (7) never owned, leased, rented, maintained or had an interest in any real property in Connecticut; and (8) never been a party to a contract made or to be performed in Connecticut.
These affidavits, submitted in support of the motion to dismiss, raise factual questions. Therefore, the burden is upon Backstrom to produce evidence meeting both conditions of 33-411 (b) for each of the third-party defendants. Standard Tallowv. Jowdy, supra, 190 Conn. 48.
The plaintiff argues that each of the third-party defendants: (1) communicated with persons in this state via telephone calls and telecopies; (2) entered into loan agreements that required payments to enter and exit this state; and (3) acquired an interest in Connecticut real estate. The plaintiff argues further that this behavior constitutes "transacting CT Page 1357-TTT business" in Connecticut and therefore each of the third-party defendants is subject to jurisdiction pursuant to § 33-411 (b). It is not necessary, however, to determine whether this conduct confers jurisdiction, because the plaintiff has failed to produce evidence of this behavior.
a) Communication with Parties in Connecticut
The plaintiff produces no evidence that GIAB and FABG communicated with parties in Connecticut.[5] With respect to GAB, the only evidence of communication the counterclaim plaintiffs produced was a copy of a telefax from Lexmar[6] in Connecticut to Jan Ahlgren at GAB's office in Sweden. (Third Party Plaintiff's Exhibit-O). This document, dated December 12, 1990, discusses the liquidation of Starlux.[7] At the time the telefax was sent, Ahlgren was a director of GPLC (Third Party Defendant's Exhibit A-4, response to #40) as well as an employee of GAB and FABG (Third Party Defendants Exhibit A-2 at ¶ 19 and A-5 at 8-9). Because he was an employee of GAB and FABG, Ahlgren was often at their Sweden office and as a matter of convenience he received correspondence there. However, at the time he received the fax he was acting as a director of GPLC. (Third Party Defendants Exhibit A-2, ¶ 19).
Backstrom has failed to establish that Ahlgren was acting as an agent of GAB when he received the telefax. Thus, this single communication with Ahlgren at the GAB office is not sufficient to establish jurisdiction over GAB.
b) Loan Agreement
Backstrom argues that he entered into a workout agreement with "Gamlestaden" that required funds to be transferred to and from Connecticut for the purpose of providing additional financing for the purchase of Lineas Ecoa, a Spanish flag vessel. Again, however, the plaintiff fails to offer evidence linking each of the third-party defendants to the workout agreement.
Backstrom contends that GAB was involved in the workout agreement because Ragnar, a GAB consultant, was placed in charge of the loan. In support of this contention, Backstrom offers a copy of a communication from Ragnar to GPLC. (Third-Party Plaintiff's Exhibit V). This document, dated October, 3, 1991, indicates that Ragnar was working on matters for Stuart and Starlux Corp., two named third party plaintiffs in this action. CT Page 1357-UUU Ragnar, however, was on the GPLC board of directors at the time he sent that communication. (Third Party Defendant's Exhibit A-4). Backstrom fails to show that Ragnar was acting in his capacity as a consultant for GAB when he was placed in charge of the workout loan. Therefore, it is submitted that the evidence offered with respect to Ragnar fails to establish that GAB was involved in the workout agreement. Since Backstrom also fails to offer proof of GIAB's and FABG's involvement in the workout loan, there is no basis for jurisdiction over these two third-party defendants.
c) Real Estate
Finally, Backstrom contends that Connecticut has jurisdiction because part of the workout plan involved security in Connecticut real estate. Backstrom fails, however, to produce evidence that any of the third-party defendants has an interest in Connecticut real estate. (See Third Party Defendants Exhibits B-17 to B-21, conveying an interest in real property to GPLC.) Therefore, the argument that Connecticut has jurisdiction over each of the third-party defendants because of their interest in Connecticut real property is without merit.
2. General Statutes § 33-411 (c)(1) and (4)[8]
Backstrom further asserts that Connecticut has jurisdiction over the third party defendants pursuant to General Statutes § 33-411 (c)(1) and (4) which provide that "[e]very foreign corporation shall be subject to suit in this state, by a resident of this state . . ., on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or . . . (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."
a) General Statutes § 33-411 (c)(1)
For a court to assert jurisdiction over a foreign corporation pursuant to General Statutes § 33-411 (c)(1), "the underlying contract must contemplate or encompass some contact with Connecticut . . . . Thus, the plaintiff must initially establish prima facie that a contract existed and that it was to be performed in Connecticut within the meaning of General Statutes § 33-411 (c)(1)." Allard v. Transtek International, Ltd.,
Superior Court, judicial district of Litchfield, Docket No. CT Page 1357-VVV 065182 (December 7, 1993, Pikett, J.). However, "the language of § 33-411 (c)(1) does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought." Combustion Engineering Inc. v. NEI InternationalCombustion Limited, supra, 104.
Backstrom alleges claims for breach of contract and breach of the duty of good faith and fair dealing in counts one and two of his counterclaim. He alleges that GPLC and the third party defendants executed a workout plan with the third party plaintiffs where they agreed to provide the third party plaintiffs with additional financing for the purchase of Lineas Ecoa, a Spanish flag vessel. Backstrom contends that the third party defendants should be held liable along with GPLC because GPLC has at all times acted as an alter ego for GAB, FABG and GIAB. (Defendant's revised answer, special defenses and counterclaims and/or setoff, ¶ 93-4). Thus, Backstrom argues that the corporate veil between GPLC and the third party defendants should be pierced in order to hold the third party defendants liable for breach of contract.
Backstrom has failed to produce any evidence that GPLC has acted as an alter ego for the third party defendants or that the corporate veil of the third party defendants should be pierced for jurisdictional purposes.[9]
Furthermore, there is no evidence that the third party defendants were parties to the workout agreement or any other contract executed by the third party plaintiffs. The alleged workout plan, as well as promissory notes and other documents that were executed as part of the alleged workout plan were all between the third party plaintiffs and GPLC. (Third Party Defendants' Exhibits B-17 to B-23, B-25 to B-32).
Backstrom has failed to produce evidence that any contract existed between the third party plaintiffs and the third party defendants, or that the third party defendants were obligated to perform under any contract executed by the third party plaintiffs. Because there is no evidence of the existence of a contract between the third party plaintiffs and the third party defendants, there is no basis for jurisdiction under § 33-411 (c)(1).
b) General Statutes § 33-411 (c)(4)
In order to invoke jurisdiction under § 33-411 (c)(4), "only CT Page 1357-WWW a single act of tortious conduct need be shown." (Internal quotation marks omitted.) SGI Partners v. Addison Design Company,
Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 140369 (April 12, 1995, Lewis, J.). Furthermore, "the scope of the inquiry is limited to where the acts were committed and not whether they were tortious. This does not become the type of case where the question of jurisdiction is dependent on a decision of the merits." (Internal quotation marks omitted.) Olson v. Accessory Control Equipment,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 525839 (April 13, 1995, Corradino, J.,14 Conn. L. Rptr. 82) citing Southern New England Distributing Corp.v. Berkeley Finance Corp., 30 FRD 43 (D.Conn. 1962).
Backstrom alleges in counts three through seven of his counterclaim that each third party defendant made negligent misrepresentations, tortiously interfered with the workout agreement between the third party plaintiffs and GPLC, and otherwise engaged in unfair trade practices in violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b,et seq.
Backstrom alleges in his counterclaim that each third party defendant made negligent misrepresentations in that it intended to provide the third party defendants with additional financing in order to purchase Lineas Ecoa, a Spanish flag vessel, and that as a result of such misrepresentations, the third party plaintiffs were induced into entering a global guarantee. Backstrom fails to produce evidence demonstrating that any of the representations were made by the third party defendants. The only evidence indicating an intent to provide additional financing to the third party plaintiffs are conversations that took place between third party plaintiff Lindholm and Mr. Ahlgren, director of GPLC. (Third Party Plaintiff's Exhibit C, p. 104-07, Exhibit A, ¶ 8-9). Backstrom also provides evidence that John Corrette, GPLC's U.S. advisor, went to Connecticut to review records and discuss with the third party plaintiffs what type of arrangement could be made with regard to the additional financing. (Third Party Plaintiff's Exhibit A, ¶ 15-16.) Backstrom fails to allege that any employee or agent acting on behalf of the third party defendants made representations to provide additional financing. It has already been demonstrated that Mr. Ahlgren was acting in his capacity as director of GPLC when he offered to provide the third party plaintiffs with additional financing.[10] Furthermore, Mr. Corrette states in CT Page 1357-XXX his testimony that he only works for GPLC. (Third Party Defendants' Exhibit A-6, p. 14.). Thus, any representations made to the third party plaintiffs regarding additional financing were only made by representatives of GPLC. Backstrom fails to show that any third party defendant made any representations regarding additional financing.
Backstrom also contends that each third party defendant tortiously interfered with the workout plan established between the third party plaintiffs and GPLC. Specifically, Backstrom alleges that in a directive of GIAB, it states that matters such as continuation of the workout agreement are to be decided by the Board of Directors of GAB and not by GPLC. Thus, decisions not to advance the funds were made by GAB (Third Party Plaintiff's Exhibit Y). Backstrom further argues that "Gamlestaden breached the workout plan, interfered with Starlux' creditor relations, interfered with Starlux' operations and disrupted the restructuring and sale of its Spanish subsidiary." (Third Party Plaintiff's Supplemental Brief, p. 23).
Backstrom misconstrues exhibit Y by alleging that this document demonstrates tortious interference. The title of the document reads "Proposed Rules for Responsibility and Decision making in the Gamlestaden Group." There is no evidence that such proposals were ever enacted. Furthermore, even if these proposals were to have been enacted, they would still not demonstrate tortious interference. There is no mention of any of the third party plaintiffs or of the workout agreement in question. Furthermore, Starlux's own treasurer, Mr. Geijer, stated in July of 1991 that "Gamlestaden" had already fulfilled its obligations under the workout plan by advancing even more funds than had originally been requested for a longer period than anticipated." (Third Party Defendants Exhibit B-37), thus, demonstrating that the workout plan had not even been breached. In addition, Backstrom offers no proof of tortious conduct on the part of FABG or GIAB individually.
Backstrom also alleges that "Gamlestaden" interfered with Starlux's relations with the Royal Bank of Scotland (RBS). Specifically, Backstrom alleges that RBS offered to provide direct financing for the subsidiary of Lineas Ecoa. Gamlestaden asked to speak to RBS about reserves RBS held in connection with its financing of Starlux. Starlux refused to give its permission to Gamlestaden to speak with RBS. Nevertheless, Gamlestaden contacted RBS anyway and allegedly claimed that Starlux CT Page 1357-YYY misappropriated funds. Backstrom further contends that this caused a delay in RBS's decision to provide financing to Starlux.
The proof offered by Backstrom to support this allegation is Mr. Alexander's deposition. (Third Party Plaintiff's Exhibit F, p. 366-68.) In the deposition, Mr. Alexander testifies that it was his idea to contact RBS and set up a meeting between them. At the time the meeting was set up with RBS, Mr. Alexander was the managing director of GPLC. At most, Backstrom has shown that GPLC contacted RBS in connection with Starlux's financing. Backstrom fails to produce evidence that any of third party defendants individually contacted RBS or interfered with the creditor relationship between RBS and the third party plaintiffs.
Thus, there is no basis for jurisdiction under General Statutes § 33-411 (c)(4) since Backstrom has failed to provide evidence of any tortious conduct by the third party defendants.
It is unnecessary to determine whether the constitutional "minimum contacts" test required by due process has been met to establish long-arm jurisdiction since the third party plaintiffs have failed to establish jurisdiction under Connecticut's long-arm statute. Lombard Bros. Inc. v. General Asset Management Co.,
supra. 190 Conn. 250.
II. PIERCING THE CORPORATE VEIL
As an alternative basis for jurisdiction, the counterclaim plaintiff argues that the corporate veil between GPLC and its parent and sister corporations should be pierced in order to obtain jurisdiction over the third party defendants collectively. In piercing the corporate veil, the separate existence of the corporation may be disregarded and individual liability may be imposed on a controlling parent corporation where the subsidiary has been so controlled and dominated that justice requires liability to be imposed on the real actor. S. Cross, Connecticut Corp. Law Practice, § 3.9 (Prentice Hall Law Business, 1990); Saphir v. Neustadt, 177 Conn. 191, 209,413 A.2d 843 (1979). Thus, in piercing the corporate veil all of the contacts of GPLC and the third party defendants are considered collectively to meet the requirements of the long-arm statute. The plaintiff further contends that the traditional alter ego standard[11] applies in order to determine whether the corporate veil should be pierced for jurisdictional purposes. CT Page 1357-ZZZ
The Superior Court of Connecticut has recognized that "[a] clear distinction must be drawn between jurisdictional and liability concepts when addressing the propriety of piercing the corporate veil . . . . Traditional liability considerations on this issue, such as the instrumentality rule are inapposite for the purpose of determining when the piercing of the corporate veil is necessary to obtain personal jurisdiction under a long-arm statute." Corporation Indep. Living v. Charter Oak, Superior Court, judicial district of Tolland at Rockville, Docket No. 48503 (April 10, 1992, Sferrazza, J.).
The leading federal case applying Connecticut law that is on point is McPheron v. Penn Central Transportation Co.,390 F. Sup. 943 (D.Conn., 1975) which recognizes Cannon Mfg. Co. v.Cudahy Packing Co., 45 S.Ct. 250, 367 U.S. 333, 69 L.Ed. 634
(1925), as controlling authority on this issue. Cannon sets forth the test to determine whether the corporate veil should be pierced for jurisdictional purposes. This tests looks to whether the corporations have maintained their formal corporate separateness. McPheron v. Penn Central Transportation Co.,
supra, 956.
Backstrom's argument in support of piercing the corporate veil of the third party defendants rests on three factors: 1) the capitalization of GPLC; 2) the existence of overlapping directors; and 3) the alleged involvement of the third party defendants in GPLC's operations. The issue is whether such behavior, if proven, is sufficient to demonstrate that the defendants failed to maintain formal corporate separateness as required by Connecticut law.
1. Capitalization of GPLC
Backstrom relies on the deposition of Mr. Alexander, the managing director of GPLC, to allege that: "GPLC was never able to operate independently. Rather, it was grossly undercapitalized and relied upon Gamlestaden in Sweden for its very existence . . . ." (Supplemental Memorandum in Opposition to Defendants Motion to Dismiss, ¶ 17).
The plaintiffs have misconstrued Mr. Alexander's testimony. In his testimony, Mr. Alexander states that: "A decision was taken early on not to establish a large capital base in Gamlestaden PLC. The large capital base was established in CT Page 1357-AAAA Gamlestaden AB and the market, banks, were satisfied to rely on that guaranty instead of us having to establish a large capital base in the business. So it was a strategic decision taken years earlier." (Third Party Plaintiff's Exhibit F at 46-47). Furthermore, Mr. Alexander testified that this guaranty did not affect GPLC's ability to service existing loans. (Third Party Plaintiff's Exhibit F at 47). Thus, Backstrom offers no proof that GPLC was "grossly undercapitalized", nor does it demonstrate that the guaranty by GAB is an exercise of control of GPLC's day to day activities. On the contrary, GPLC still had control and the ability to act over its existing loans. (Third Party Plaintiff's Exhibit F at 47). Thus, Backstrom has failed to prove his `undercapitalization theory', or that it affects the corporate separateness of the defendants and GPLC.
2) Existence of Overlapping Directors
Backstrom's second argument for piercing the corporate veil of the third party defendants is that "there existed a significant overlap of directors and officers between GPLC and the third party defendants." (Reply to Third Party Defendants August 8, 1995 Memorandum in Support of its Motion to Dismiss). In support of his argument, Backstrom offers a list of all the directors of GPLC who also served as directors of the third party defendants.
In determining whether the existence of overlapping directors between parent and subsidiary corporations is sufficient to pierce the corporate veil, the district courts have stated that the mere fact that two corporations have interlocking directors does not demonstrate that the parent controls, dictates or actively participates in the day-to-day management and business operation of its subsidiary so as to justify piercing the corporate veil, so long as they can be said to wear two hats and operate in distinct capacities for each entity. McPheron v. Penn. Central Transp., supra, 955;ACS Industries Inc. v. Keller Industries, Inc., 296 F. Sup. 1160,1163 (D.Conn. 1969); Thunderbird Motor Freight v.Consolidated Pipe Supply Co. Inc. of Missouri, 623 F. Sup. 4,6 (D.Mo. 1983).
Backstrom fails to provide evidence showing that an overlapping director acted in the same capacity for both GPLC and the third party defendants. The only evidence brought forth by the plaintiff is a list of the names of overlapping directors. CT Page 1357-BBBB (Third Party Plaintiff's Exhibit D). Furthermore, the counterclaim plaintiff suggests that "third party defendants affiants Lindskog and Lundahl disingenuously suggest that Mr. Ahlgren received and sent documents from Sweden only in his capacity as managing director of GPLC, while in fact Mr. Ahlgren vacated in 1988 long before the events referred to." (Third Party Plaintiff's Reply Brief, p. 6.) The counterclaim plaintiff fails to produce any evidence in support of this allegation. The affidavit of Stefan Lindskog makes no reference to Jan Ahlgren. (Third Party Defendants Exhibit at A-4.) The affidavit of Ake Lundahl states that from 1988 to 1991, Jan Ahlgren served as the deputy chairman of the board of GPLC as well as an officer and/or director of both GAB and FABG. (Third Party Defendants Exhibit A-2 at ¶ 19). Because he was an employee of GAB and FABG, he frequently traveled to Sweden, and may have as a matter of convenience received or sent correspondence from FABG's address. (Third Party Defendants Exhibit 5 at p. 8-9, Exhibit A-2 at ¶ 19). At no time was he acting on behalf of FABG and at all times he was acting in his capacity as managing director of GPLC. (Third Party Defendants Exhibit A-2 at ¶ 19).
Backstrom has failed to establish that Mr. Ahlgren or any other director of GPLC was acting as an employee for the third party defendants. The existence of overlapping directors is not sufficient to pierce the corporate veil.
3) Third Party Defendants' Involvement in GPLC's Activities
The counterclaim plaintiff's last argument is that the third party defendants were involved in and controlled the daily activities of GPLC. It is unnecessary however, to determine whether such conduct substantiates piercing the corporate veil because the plaintiff has failed to produce evidence of such behavior.
In his reply brief, Backstrom alleges various statements to demonstrate that the third party defendants were involved in GPLC's activities. However, he offers no citations to the record to support these statements.
In pages 5 through 7 of his reply brief, Backstrom alleges the following allegations in support of his argument for piercing the corporate veil: 1) GPLC had no credit committee until mid-1992, and the committee established after 1992 appears to be a single Gamlestaden committee on which sat GIAB, GAB and FABG CT Page 1357-CCCC personnel; 2) GAB was created in 1989 to handle "group-wide matters," including matters such as the loan relationship with third party plaintiffs; and 3) GIAB decided to transfer all Gamlestaden business activities in London to FABG in Sweden.
None of Backstrom's allegations are supported by any evidence submitted by the parties. With regard to the credit committee, there is no evidence that there was a single Gamlestaden credit committee. The only document that discusses a credit committee being established are notes from a GPLC board meeting. (Third Party Plaintiff's Exhibit L.) There is no evidence in the record that supports the creation of a single Gamlestaden credit committee.
Backstrom fails to produce evidence demonstrating that GAB was created to handle group-wide matters such as the loan relationship with the third party plaintiffs. Each written agreement at issue is between GPLC and the third party plaintiffs. (Third Party Defendants' Exhibits B-1 to B-3, B-5 to B-8, B-17 to B-23, B-25 to B-32). There is no indication that any of the third party defendants took part in the loan relationship of GPLC and the counterclaim plaintiffs.
The plaintiff has failed to produce evidence that a decision was made by GIAB to transfer all Gamlestaden business activities in London to FABG in Sweden. There is no protocol or other document which suggests that GIAB decided or even considered the transfer referred to by Backstrom.
Each third party defendant argues that it is a separate corporate entity from GPLC. In support of its argument, each third-party defendant has submitted an affidavit from an officer or director of its respective corporation. Stefan Lindskog, chairman of GIAB, states in his affidavit that at all relevant times GIAB has had its own board of directors; GIAB, GAB, and FABG are different legal entities under Swedish law; each company is registered with the Swedish Patent and Registration Office and has its own organization number; GPLC is a corporation organized under the laws of the United Kingdom; GIAB conducts its own business and does not participate in the daily decisions or operations of GAB, FABG or GPLC. (Third Party Defendants' Exhibit A-3, ¶ 11-13).
Mr. Oden, Vice-President of GAB states in his affidavit that GAB had its own board of directors, officers and employees; CT Page 1357-DDDD GAB is a distinct and separate entity from GPLC, which is incorporated under the laws of the United Kingdom; GAB conducts its own business and makes its own daily decisions about its operations; and GAB has not been dominated or controlled by GPLC or any other company; GAB has only acted in the capacity of a shareholder with respect to GPLC and FABG. (Third Party Defendants' Exhibit A-1, ¶ 13-17).
Mr. Lundahl, managing director of FABG, states in his affidavit that FABG has its own board of directors, officers and employers; FABG has maintained an office which has been separate from offices of GPLC; FABG acts only in the capacity of a sister corporation with respect to GPLC; and FABG has its own business functions which are distinct from GPLC.
The counterclaim plaintiffs have offered no evidence to rebut the affidavits of the third party defendants. There is no basis for jurisdiction over the third party defendants collectively, because the corporate veil has not been pierced.
There is no basis for jurisdiction over the third party defendants. Accordingly, the motion to dismiss is granted.
KARAZIN, J.